Jones, &c., v. Higgins, &c.

CASE 78—EQUITY—OCTOBER 5, 1882.

# Jones, &c., v. Higgins, &c.

APPEAL FROM GARRARD CIRCUIT COURT.

·1. There was no privity of contract between Jones and Gano except such as the law created by reason of 'the latter's undertaking, upon the consideration moving from Jones, to pay the Higgins debt.

· ·2. The law implies a promise in such a case, but the agreement may be canceled by the act of the parties creating it before its acceptance by the party for whose benefit it was made.

3. There is no reason why the parties who made the contract should not speak as to its terms, and their action in reference to it before its acceptance by the creditor of Jones, and if they show that the contract did not exhibit the true meaning of the parties to it, they · had the undoubted right to abandon it before its acceptance by the appellee.

.BRECKINRIDGE & SHELBY, BURDETT & HOPPER, W. G. WELCH, AND A. DUVALL FOR APPELLANT.

.1. That the deed between Jones and Gano did. not correctly state the contract in reference to the debt due to appellee Higgins, as clearly pleaded and proved.

2. The sole object of the record of a deed or mortgage is constructive notice of its contents to all subsequent purchasers and mortgagees. (Jones on Mortgagees, sec. 557.)

3. The decision of the court below gives appellee, by substitution, what he is not entitled to. Neither subrogation nor substitution has any application to this case. (1 Story's Eq., sec. 635.)

· 4. There is no privity between Gano and Higgins. (Wortly v. Tuggle, 4 Bush, 169; 1 Johnson's Ch'y, 585; 8 Otto, 88, 91; Ib., 82, 83; Winlock v. Hardin, 4 Litt., 274; Bigelow on Estoppel, 289; 2 Bouv. Dic., 556; Gen. Stat., chap. 22, sec. 1; 47 N. Y., 491; Wash. on Real Prop., 590; 2 J. J. Mar., 2; 8 Otto, 123.)

¨W. O. BRADLEY AND WM. LINDSAY FOR APPELLEES.

· ¨1. Gano did not agree with Higgins to pay Jones' debt, but with Jones to pay his debt to Higgins, and therefore the agreement was not within the statute. (North v. Robinson, 1 Duv., 93; 7 Bush, 457.

2. The case of Conway v. Bank of U. S. has no bearing upon this case. It was overruled in Moberly v. Smith, 10 B. Mon., 270; Ward v Bank of Ky., 14 B. Mon., 253.

` .3. The proof is clear that there was no mistake. (Williams v. Jones, 3 Mar., 302; Bigelow on Estop., 267, 300, 301; 5 B. Mon., 323.)

4. The record shows that the deed between the parties is fraudulent. (7 Mon., 482; 3 Dana, 510; 8 Dana, 80; 9 *Ib.*, 450; Litt. Sel. Cas., 461; 5 J. J. Mar., 554.)

5. It shows that the deed was fraudulent and void because of a secret trust entered into between Gano and Jones. (White v. Graves, 7 J. J. Mar., 522; Trimble v. Ratcliff, 9 B. Mon., 513; 17 *Ib.*, 307; 3 Mon., 4.)

6. In this state of case Gano should be postponed until appellees' debt is paid. (White v. Graves, 7 J. J. Mar., 526; 4 Mass., 357; 2 Pick., 137; Wright v. Wright, 2 Litt., 12; 4 Barb., 280.)

7. Gano being a non-resident, a return of *nulla bona* was not necessary. (1 Litt., 508.)

8. The deed is absolutely void. (Gen. Stat., 488; Worland v. Hatten, 3 Dana, 478.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This case was once affirmed by a divided court, and a rehearing granted, the case again argued, and is now under submission for the second time. One of the appellants, B. M. Jones, being desirous of raising money to relieve him from pecuniary embarrassment, applied to his friend, R. M. Gano, to assist him in borrowing the money. The amount needed was ten thousand dollars, and by a negotiation began by the appellant, R. M. Gano, and concluded by both Gano and Jones, the money was obtained from the appellee Higgins for the period of three years, the note, however, to mature sooner upon the failure of Jones, the borrower, to pay the annual interest. The note of Jones was executed for the money on the 2d of November, 1874, and a mortgage executed on a portion of what was known as the *home farm* of Jones to secure the debt. The home farm contained over six hundred acres, and was made up of smaller tracts purchased by the mortgagor. One of the tracts was known as the Mullins tract, and the other as the Turner tract, the entire quantity of the land mortgaged being four hundred and thirty-four acres, and described by metes and bounds.

Jones being indebted to Gano in or about the sum of ten thousand dollars, and the latter being desirous of securing his debt, purchased, as is alleged, of Jones the entire home farm, including the boundary mortgaged to the appellee Higgins, for the sum of *twenty thousand dollars cash in hand paid*, and obtained from Jones a deed. Ten thousand dollars of the consideration expressed in the deed was the debt due by Jones to Gano, and "*the remaining ten thousand dollars* being money *borrowed of* Charles V. Higgins, which *R. M. Gano* shall pay, and release this land of *a mortgage* held by said Higgins for *ten thousand dollars*, for which said Higgins *holds my* note, and receipt of which is *hereby* acknowledged, &c., do bargain, sell, and convey to R. M. Gano the following tract of land, containing six hundred and sixty-one acres, more or less." This conveyance was made on the 4th of November, 1874, but was not recorded or lodged for record until the 21st of June, 1877. Jones failed to meet his obligation to the appellee Higgins, and the latter, on the 12th of July, 1877, instituted this action in the Garrard circuit court to foreclose his mortgage, and to make Gano personally liable for the amount of the debt, interest, and costs, or for any deficit that might remain after the sale of the land. By an amended petition, subsequently filed, he alleges that, at the time he loaned the money, Gano represented that the brick dwelling on the home farm was embraced by the boundary of the land mortgaged, and that the land was worth forty dollars an acre, and but for these representations made by Gano, and known by the latter to be false, he would not have made the loan; that the land is not worth really more than fifteen dollars an acre. He further alleges that the conveyance to Gano was fraudulent, and asks that his mortgage may be re-formed so as to embrace

the brick dwelling, or that he have judgment against Jones
and Gano for the difference in value by reason of the brick
dwelling being without the boundary. In his original peti-
tion he states that he would have enforced payment of his
debt at the end of the first year if he had not been satisfied
that for any deficiency in said land the said Gano, under the
terms of his deed from Jones, was responsible, and by an
amended pleading says that Gano promised to sell the lands
of the appellant Jones and pay his debts, and that he would
be invested with title for that purpose.

Gano filed an answer controverting all the charges of
fraud, denying that he made any representation as to the
value of the land, or that the brick house was within the
boundary, as he did not know what part of the home farm
Jones intended to mortgage; that he likely stated that some
of the land was worth thirty-five or forty dollars per acre,
but advised the appellee to make inquiry in regard to it;
says that it was worth at the time thirty or thirty-five dol-
lars an acre. He further denied any liability to the appellee
by reason of the conveyance, and for further defense pleaded
that his only purpose in obtaining the conveyance was to
secure himself, and to aid the appellant Jones in paying his
debts; that he purchased really only the balance of the
home tract, and the contract in fact was that "he was to
pay Jones $10,000 cash for all the land not embraced by the
mortgage, and was to have the privilege of paying the debt
to the plaintiff Higgins, provided he could raise the money,
and he was not to be bound to pay the debt and take the
mortgage land, but took the same subject to the mortgage
of Higgins;" that by mistake of the draftsman the agree-
ment was omitted, and he notified Jones, before his note
fell due to Higgins, that he could not take the land. He

asks that the deed be re-formed, and makes both Jones and Higgins defendants to his cross-petition.

The principal question in the case arises with reference to the clause in the deed requiring the payment by Gano of the Higgins debt.

It is evident, from the testimony in the case, that neither Jones or Gano supposed they were creating a liability on the part of Gano to Higgins by which the latter could enforce payment of the ten thousand dollar note, and while the promise to pay the Higgins debt, based on the conveyance to Gano of the land, would authorize the institution of an action upon it by Higgins, it is evident the intention of the parties to the contract or conveyance must be considered for the purpose of determining whether the language used in the deed expresses the real contract between them. There is no ambiguity on the face of the instrument, and the only question here is, did the deed contain the true contract, and was it abandoned, or Gano released from liability before the institution of the action by the appellee?

There was certainly no actual privity of contract between the appellant Gano and the appellee, except such as the law created by reason of his undertaking, upon the consideration moving from Jones to pay the Higgins debt. The law implies the promise in such a case, but the agreement may be canceled by the act of the parties making it before acceptance by the party for whose benefit it was made; and if so, there is no reason why the parties making the contract should not be allowed to speak as to its terms and their action in reference to it before its acceptance. If they act in good faith, and with no fraudulent purpose, we know of none more competent to determine the purpose in view, and the terms of the contract, than both of the parties to it;

and when concurring as to what the agreement was, or what it should have been, there can be but little difficulty in ascertaining the rights of the parties. It is not pretended that Gano derived any benefit from the loan made by the appellee to Jones, or that he was individually liable for the money. The proof shows that the appellant Gano had married a niece of the appellant Jones many years before the latter became embarrassed; that they were on intimate terms, and Gano was endeavoring to relieve Jones from his pecuniary trouble, and to secure what Jones owed him. What Gano's ability was to aid Jones does not appear; but it follows, from what is to be learned from the record, that he was in no condition to assume, or at least pay, the Higgins debt at the time Jones made him the conveyance, and he alleges and testifies that it was only his privilege to pay the debt and take the land if he could raise the money, and that such was the real agreement. Jones, the vendor, corroborates fully this statement. Is it true? The conveyance was kept in Gano's pocket from the date of its execution in June, 1874, without any obligation whatever having been executed to Jones, and until it was recorded in June, 1877, and then it was made a matter of record to evidence, as they both swear, Gano's title to the balance of the tract, as they had learned that executions from the county of Mercer were about being levied on the land. That when the conveyance was taken for record, he (Gano) suggested to Jones that it did not contain the agreement, as he was not bound to pay the Higgins debt. Jones agreed that such was the case, and the only reason for recording it was to notify execution creditors of Gano's title.

Gano had never taken possession of the 434 acres mortgaged to Higgins; but Jones remained upon it, used and cul-

tivated it as his own, and for the reason that Gano was in no condition to pay the Higgins debt. He was paying to Gano rent on the balance of the land, but as to the mortgaged land there is no pretense or reason for supposing, so far as Gano and Jones are concerned, that either regarded Gano as the owner of the mortgaged property, and both were doubtless proceeding on the idea that no one had any voice with regard to the transaction but the parties to it.

The appellee Higgins had no notice of the sale and conveyance of this land to Gano at or before the time the conveyance was executed, nor did he have any notice whatever of the conveyance until it was entered of record in June, 1878, a few days before the institution of this action.

A contract had been made for appellee's benefit, of which he was in entire ignorance for the period of three years, and when the delay in complying with its terms, as expressed in the deed, is accounted for, because of its failure to express the true meaning of the parties, and that it had been abandoned on that account, it is urged there is no satisfactory proof on the subject, and that the recording of the deed is conclusive of Gano's liability. That the testimony as to the mistake, as well as the abandonment of the contract, should be clear and satisfactory, must be conceded; and if this litigation was between *Jones* of the first part, and Gano of the second part, with conflicting statements by each, or with the testimony of Gano controverted alone by the answer of Jones, it might well be argued the case had not been made out. Gano copied the conveyance, is a man of intelligence and business habits, and with Jones denying his right to relief, there would be weighty reasons for holding him to the letter of his undertaking; but here the vendor and *vendee* both agree as to the extent of Gano's liability and

the character of his undertaking. They fully understood
each other. They were contracting with and for them-
selves. They both speak as to its terms, and their state-
ments are not only consistent with the transaction itself,
but presents such a state of case as would naturally arise
between parties occupying the relation they did the one to
the other. There was no ratification of the conveyance by
placing it to record if their statements are true, and there is
nothing so unnatural or inconsistent in the action of either
as to justify the conclusion that they have made false state-
ments. Gano, in his testimony, states that the mistake origi-
nated in failing to make a correct copy from the original;
that the words "if R. M. Gano shall pay the debt," were
omitted, and while this language could. not be inserted
in the deed before us to make it intelligible, it conveys the
idea intended to be expressed as to what the contract was.

The claim of the party for whose benefit the promise is
made is more in the nature of an equitable than a legal de-
mand, and some of the authorities maintain that no action
at law will lie until there is some assent to or acceptance
of the contract. *Indebitatus assumpsit* was regarded as the
proper action where no actual privity existed, and when in
equity and good conscience the defendant, by reason of his
promise and receiving a consideration therefor, ought to pay
the plaintiff. (1 Gray, Miller's adm'r v. Whipple, 323.)

It is well settled, however, in this state, that an action at
law may be maintained; but the appellee is now in a court
of equity seeking, as he maintains, to compel Gano to pay
ten thousand dollars for the land that he says is not worth
over seven thousand; and while equity cannot relieve from
the letter and spirit of the undertaking, there is an equita-
ble defense, and that defense is, that both the vendor and

vendee regarded this promise to pay the ten thousand dollars no longer existing, and for the reason, if no other, that it failed to express the terms of the undertaking. The parties had the undoubted right to change or abandon the contract before its acceptance by the appellee. (See Bassett v. Hayes, 43 Wisconsin; Davis v. Calloway, 30 Indiana; Haley v. Roberts, 40 New York; Winkly v. Foye, 37 New Hampshire; Spalding v. Henshaw, MS. Opinion.)

They both regarded the deed to this extent as inoperative, and both knew and agree that it did not express the true meaning of the parties. This being the case, why should the appellee maintain his action in the absence of a fraudulent purpose between these parties to deprive him of his lien? The lien on the land exists. It has not been interfered with in any way. That Gano believed the land was worth ten thousand dollars is evidenced from the fact that he was willing to pay that much for it. He shows by those having a full knowledge of the land that it was worth $13,000 at the date of the mortgage, and averaging the value as fixed by all the witnesses, it was worth twenty-two dollars an acre, or nine thousand five hundred dollars when mortgaged. It is evident that the land decreased greatly in value by reason of the pecuniary condition of the country for some time after the sale, and the loss, if any, must follow the mortgagee, and not the appellant Gano. Higgins states that Gano promised to sell the lands of Jones and pay the debts. Gano says Jones had other lands, and he was trying to sell them for that purpose, and while the creditor and the appellants make statements conflicting with each other, we perceive no reason from the record before us for making the balance of the land liable for appellee's debt,.

as Gano had purchased and paid for it; and while his purpose may have been to permit Jones to redeem it, it cannot be appropriated to the payment of appellee's debt without refunding to Gano his purchase-money. This brings us to the consideration of the question as to the payment by Gano to Jones of the ten thousand dollars.

It appears from the proof (uncontradicted) that many years prior to these transactions, and when Jones' pecuniary condition could not be questioned, being without children, he conveyed to Gano's wife (a niece) a tract of land in Garrard, and executed to her a deed. That she was unwilling to live upon the land, and Jones took the land back, and gave to her or Gano his note for $4,300. This note constituted a part of the consideration paid by Gano to Jones for the balance of the tract of land, and was executed at a period when no suspicion or cause for insolvency existed. There is, therefore, no reason why the payment was not in good faith.

As to the balance of the payments, it satisfactorily appears that Gano paid out various sums of money for Jones, the evidence of which he produces; and while there may be slight discrepancies as to amounts and dates, it conduces to show the fairness of the transaction instead of evidencing the existence of fraud.

The question made as to the land intended to be embraced by the mortgage must also be disposed of. The question has been fully discussed here, and it is proper to determine it. Higgins, who loaned the money, and his son, make statements the one way, and Gano and Jones the other, and with the land identified by metes and bounds, and in the absence of any motive to deceive the appellee, connected with the value of the land at the time, we perceive no reason

for determining that the brick dwelling was intended to be included, or that the appellee was so informed by Gano. The Mullins place had a building upon it. Jones once lived there.

He was mortgaging 434 acres of his home tract to secure this debt, and we think, from the testimony, that both Gano and Jones had reason to believe that it would amply secure the payment of the money loaned, and, as before stated, the best evidence of the good faith of Gano as to the value, if such a representation was made, is found in his willingness to give $10,000 for it. It is not insisted that the 220 acres are worth more than the 434, and, in fact, when Jones and Gano were talking about the trade, the mortgage land was estimated at a greater value than the balance of the tract. The court below finds no fraud with reference thereto, and in this we concur.

It results, therefore, that Higgins is remanded to his lien on the 434 acres of land, and that the balance of the tract should not have been sold, regardless of Gano's claim. Gano is entitled, as against Higgins, to the balance of the tract, and if the balance is sold, it must be sold subject to Gano's claim. In other words, Higgins' lien on the mortgaged land was properly enforced, but when he comes to subject the balance of the tract, it must be subordinate to Gano's claim of $10,000.

It therefore necessarily follows that no personal liability exists upon the part of Gano to pay Higgins this debt, and that the court below committed no error in refusing to the appellee his writ of possession under the execution purchase.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.