**RHODES v. RHODES et al.**

Court of Appeals of Kentucky.

Nov. 20, 1953.

Rehearing Denied April 30, 1954.

Robert J. Watson, Middlesboro, for appellant.

E. B. Wilson, Pineville, A. E. Funk, Jr., Middlesboro, for appellees.

CULLEN, Commissioner.

The question concerns rights under a third party beneficiary contract.

In 1947 John D. Rhodes, Sr. (now deceased) entered into an employment contract with American Association Incorporated, which carries on operations in Bell County, Kentucky, but which has its headquarters in England. Among other things, the contract provided for certain annuity payments to Mr. Rhodes' son, the appellant John D. Rhodes, Jr., in the event Mr. Rhodes Sr., died before reaching the age of 65. In 1950, after having divorced his first wife and having married his secretary (appellee Ola Pursifull Rhodes), Mr. Rhodes, Sr., entered into a new employment contract with American Association Incorporated, in which the second wife was named as beneficiary of the annuity payments, in place of the son. Following Mr. Rhodes' death in 1951 (at an age less than 65), the second wife instituted suit on the new contract, naming the Association and the son as defendants. The lower court found that the first contract had been effectively cancelled or rescinded "in the manner therein provided," and that the second wife was entitled to recover the annuity payments under the new contract. The son has appealed.

Under the 1947 contract, Mr. Rhodes, Sr., was employed as vice president and general manager of the Association, for a period of five years, at a salary of $10,000 per annum plus a share in dividends. The contract provided for a pension to Mr. Rhodes Sr., if he remained in the employ of the Association until reaching the age of 65, or for a ten-year annuity to his son if he died before reaching 65 while having remained in the employ of the Association. Since Mr. Rhodes, Sr., was only a little more than 50 years of age at the time the contract was made, it was obvious that renewals of the five-year contract would be necessary in order for the 65-year provision to become applicable, so provision was made in the

contract for renewals by mutual agreement. It was specified that if the contract was not renewed at the expiration of the initial period, the Association would pay Mr. Rhodes, Sr., $6,230 in full settlement of all liabilities.

The contract contained the following significant clause:

"In view of the possibility of fluctuation in value of Pounds Sterling or Dollars, either party hereto may request a re-negotiation of this contract at any time during the term thereof."

At the time the 1947 contract was entered into, the son, John D. Rhodes, Jr., was an infant. There is no evidence that he had any knowledge of the contract having been made or that he expressly agreed to or accepted its provisions.

In 1950 Mr. Rhodes, Sr., and his second wife made a trip to England and the new contract was then agreed upon. The 1950 contract differed from the 1947 contract in the following respects:

1. Mr. Rhodes, Sr., was employed as president and general manager instead of vice president and general manager.

2. His salary was fixed at $13,000 per annum instead of $10,000.

3. The term of the contract was to be five years from July 1, 1950, instead of five years from April 1, 1947.

4. Ola Pursifull Rhodes (the second wife) was named as beneficiary of the annuity payments, instead of the son.

In all other respects the contract was the same as the 1947 contract.

The minutes of the board of directors of the Association, at the time the 1950 contract was agreed upon, recited that it was resolved that the 1947 contract be "varied" and "amended" so as to embrace the changes above mentioned, and that "Mr. Rhodes' present contract be cancelled and that he be authorized to have a new contract drawn up by the Company's lawyer in America, *on the same lines* but including the above *variations* for submission to the Board for execution in due course" (our emphasis).

The evidence establishes that the second wife agreed to and accepted the provisions of the 1950 contract.

Although we do not consider it to be important under our view of the case, we perhaps should mention that shortly before his death Mr. Rhodes, Sr., made an attempt (which the appellees argue was ineffectual) to change the beneficiary in the 1950 contract so as to again name his son as the beneficiary.

As we view it, the key question in the case is whether Mr. Rhodes, Sr., and the American Association Incorporated had the right to cancel or rescind the 1947 contract so as to destroy the son's interest as third party beneficiary.

■ The parties are in agreement as to the basic governing principle of law, which is that, unless the right of rescission is reserved in the contract, the parties to a contract for the benefit of a third party cannot rescind it without his consent, so as to deprive him of its benefits, after he has accepted, adopted or acted upon the contract. 17 C.J.S., Contracts, § 390, page 883; 12 Am.Jur., Contracts, sec. 290, p. 843; 81 A.L.R. 1293; Restatement of the Law of Contracts, sec. 142, p. 168. While some authorities hold that the contract may not be rescinded even before the third party becomes aware of or accepts the contract, it appears that Kentucky follows the majority rule stated above. See Jones v. Higgins, 80 Ky. 409.

■ In view of the fact that John D. Rhodes, Jr., was an infant at the time of execution of the 1947 contract, we are of the opinion that his acceptance of the contract for his benefit should be presumed. The theory of presumed acceptance by an infant was followed by the Indiana Court in Waterman v. Morgan, 114 Ind. 237, 16 N.E. 590, and this theory is consistent with the theory of the presumed acceptance by an infant of a deed made to him, which has.

been followed by our court. Mullins **v.** Mullins, 120 Ky. 643, 87 S.W. 764; Slayden v. Johnson, 296 Ky. 598, 178 S.W.2d 36; Cassady v. Cain, 311 Ky. 179, 223 S.W.2d 744.

 Acceptance by the son being presumed, we then face the question of whether the right to rescind was reserved in the 1947 contract. In the Restatement of the Law of Contracts, sec. 142, Comment a., p. 168, it is stated that the reservation of the power to rescind must ordinarily be expressed in specific terms.

The only provision in the 1947 contract that remotely resembles a reservation of the right to rescind is the sentence hereinbefore quoted with reference to the right of either party to "request a re-negotiation" of the contract. Our interpretation of this provision is that it contemplated renegotiation only with respect to the amount of compensation or benefits to be paid. This interpretation is strengthened by the fact that the sentence in question is prefaced by a reference to the possibility of fluctuation in the value of British or American currency.

Actually, the parties to the 1947 contract did not in reality rescind the contract, because they spoke in terms of *varying* and *amending* the contract. While they did make reference to "cancellation" of the contract, and the drafting of a "new contract," it is clear that they were referring to the paper document rather than the contractual agreement itself, which remained substantially the same.

With the exception of the change of beneficiary, the only renegotiation involved in the 1950 contract was with respect to the amount of salary and the term of the contract. We think the sentence concerning renegotiation, in the 1947 contract, had reference only to this kind of modification and that the parties could not, by going through the motions of making a new contract, destroy the rights of the beneficiary.

It is our opinion that John D. Rhodes, Jr., is entitled to recover under the 1947

contract. It is perfectly clear that the parties did not intend the provisions of the 1950 contract, for the benefit of Ola Pursifull Rhodes, to be operative unless the 1947 contract was effectively cancelled. Therefore, Mrs. Rhodes cannot recover under the 1950 contract.

The judgment is reversed, with directions that it be set aside and that a judgment be entered in conformity with this opinion.