John L. KING, Trustee,
Plaintiff-Appellant,

v.

NATIONAL INDUSTRIES, INC.,
Defendant-Appellee.

No. 74–1625.

United States Court of Appeals,
Sixth Circuit.

March 6, 1975.

Linda N. Coffee, Philip Palmer, Jr., Dallas, Tex., Glenn L. Schilling, Louisville, Ky., for plaintiff-appellant.

Paul N. Kiel, Boyce F. Martin, Jr., Barnett, Greenebaum, Martin & McConnell, Louisville, Ky., for defendant-appellee.

Before MILLER and LIVELY, Circuit Judges, and McALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

Plaintiff as a Trustee in Reorganization instituted the present action in the court below to set aside an alleged transfer of property by the debtor occurring within one year prior to the filing of a petition under Chapter X of the Bankruptcy Act.[1] Summary judgment having been granted for defendant, plaintiff perfected an appeal to this Court.

The pertinent facts are undisputed and may be summarized as follows:

The Institute for Financial Planning, Incorporated (I.F.P.), a New York Corporation, purchased from defendant, National Industries, Inc. (National), a Kentucky Corporation, and RIC International Industries, Inc., (RIC) certain shares of Hamilton Life Insurance Company of New York. At this time and until September 26, 1966, National was RIC's parent, owning 38.8% of RIC's common stock. In payment for the shares, I.F.P. issued two promissory notes, one payable to the order of RIC and one to the order of National. Both notes were guaranteed by one Phillip Goldberg who controlled I.F.P.

On September 26, 1966, pursuant to a purchase agreement between National and South Atlantic Co. (SAC), SAC acquired the 38.8% of the outstanding shares of the capital stock of RIC. Section 2.03 of Article II of the 1966 agreement reads as follows:

> National shall be liable for 38.8 percent of any deficiency in the payment by Phillip Goldberg of his indebtedness to RIC.

Goldberg and I.F.P. subsequently defaulted in the payment of their obligations to National and RIC and a judgment against Goldberg was entered in the Supreme Court of New York in favor of National in the amount of $754,604.58 and in favor of RIC in the amount of $596,458.20. Efforts to collect on these judgments were unsuccessful.

1. 11 U.S.C. § 501 et seq.

On May 27, 1970, National, SAC and RIC executed an agreement which, in pertinent part, provided:

National, coincident with the execution of this Agreement, shall pay to RIC the sum of $110,000 as settlement and in full payment and satisfaction of all obligations of National to SAC and/or to RIC arising out of said Agreement of September 26, 1966, above described, and out of the transactions set forth in such agreement, and National shall have no further liability or obligation to SAC or RIC whatsoever with respect to such agreement and transactions.

Pursuant to this agreement, National gave its check to RIC for $110,000.00 in satisfaction of the settlement.[2]

On September 16, 1970, RIC filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act. The present action was commenced on September 15, 1972 by the plaintiff as Trustee in Reorganization of RIC. The gravaman of plaintiff's complaint is that the release by RIC of National from the balance of its guaranty obligation as evidenced by the 1970 agreement constituted a transfer of property belonging to RIC under the 1966 agreement within one year prior to the filing of the Chapter X petition, without fair consideration and while RIC was insolvent. Plaintiff thus claimed that the said release or transfer is voidable under 67d and 70e of the Bankruptcy Act.[3] The complaint sought judgment setting aside or voiding the release and granting the plaintiff a recovery on National's guaranty.

On November 15, 1973, defendant National moved, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted. This motion was accompanied by an affidavit of National's vice president, Solomon, who had executed the 1966 agreement and the 1970 agreement on its behalf.[4] This affidavit stated that Section 2.03 of the 1966 agreement was included "in order to provide SAC with a reduction in its purchase price of RIC as a result of a possible reduction in value of the RIC stock resulting from a potential failure by Goldberg to pay his indebtedness to RIC" and that "[t]he liability of National under Section 2.03 was an obligation to run only to SAC and existed solely for the purpose of protecting SAC's investment in the RIC shares to the extent indicated and for no other reason."

In the course of extensive briefing of the question and in response to the Solomon affidavit, plaintiff submitted the affidavit of his lawyer, Phillip I. Palmer, Jr. This affidavit stated that while plaintiff was unable at that time to offer countervailing affidavits from persons having personal knowledge of the circumstances surrounding the execution of the 1966 agreement, he could point to evidence which would be available to him at trial to support his position. This evidence was to show that 38.8% of the Goldberg debt was approved by RIC's accountants to be carried as an asset on RIC's books, and perhaps that this was done after consultation with National. Palmer explained his failure to obtain depositions or affidavits by stating that he was surprised at the position taken by National.

After the trial court had granted summary judgment for the defendant, plain-

---

**2.** At the time of this agreement 38.8% of Goldberg's unpaid indebtedness to RIC was $231,406.38. This obligation of National was thus settled for less than 50 cents on the dollar.

**3.** 11 U.S.C. §§ 107(d), 110(e).

**4.** Although the motion of defendant was under Rule 12(b), the court, after allowing an opportunity to present all materials pertinent to a motion for summary judgment and after considering matters outside the pleadings, treated the motion as one for summary judgment and disposed of it as provided in Rule 56. Plaintiff, in his reply brief in opposition to the motion to dismiss (filed February 19, 1974) recognized that defendant's motion had "presumably . . . been converted into a *Motion for Summary Judgment* by the offer of the Solomon affidavit."

tiff filed a motion to reconsider the entry of summary judgment and alternatively for leave to file amended pleadings. With this motion was submitted a supplemental affidavit of plaintiff's attorney further outlining his efforts to obtain affidavits to rebut the Solomon affidavit. This motion was denied by the district court.

■■■ To prevail in the present case plaintiff must show that there was a "transfer" of certain "property" of RIC. This requirement of the Bankruptcy Act has as its purpose the preclusion of fraudulent conveyances of property of an insolvent debtor to the prejudice of the debtor's creditors.

The Act defines a transfer as

the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor. 11 U.S.C. § 1(30).

To satisfy this definition plaintiff attempts to show that RIC is a third-party beneficiary entitled to sue under Section 2.03 of the 1966 agreement. It is thus theorized that the 1970 agreement, by relieving defendant of part of an obligation to RIC under the 1966 agreement, in effect "transferred property" or a cause of action from RIC to defendant by cancelling a possible indebtedness without fair consideration. Unless RIC is a third-party beneficiary, under the 1966 agreement, plaintiff is unable to show that the transaction in question transferred any property to defendant National.

■■■ Plaintiff was required to show that the 1966 agreement was for the "di-

rect benefit" of RIC before he could claim any rights under it. As the Supreme Court recognized in German Alliance Insurance Co. v. Home Water Supply Co., 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912):

[E]ven where the right is most liberally granted it is recognized as an exception to the general principle, which proceeds on the legal and natural presumption, that a contract is only intended for the benefit of those who made it. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.

This view has been generally endorsed by the leading commentators. *See, e. g.,* 2 S. Williston, Contracts, § 356A at 836 (3d ed. 1959), 4 A. Corbin, Contracts, § 773 at 4 (1951).

■■■ It clearly represents the law of Kentucky: [5]

To entitle a stranger seeking to recover under a contract asserted by him to have been made for his benefit it is indispensably essential that he allege and prove that the contract was intended for his benefit in the sense that it embraces the claim asserted by him. Louisville & Nashville R. R. v. Dry Branch Coal Co., 252 Ky. 124, 65 S.W.2d 1008, 1011 (1933).

The Kentucky courts have further held that "[i]t must appear, in order that a third person may derive a benefit from a contract between two other parties, that the contract was made and entered into directly or primarily for the benefit of such third person." Long v. Reiss, 290 Ky. 198, 160 S.W.2d 668, 674 (1942).

■■■ To determine whether the presumption that the contracting parties did not intend to benefit a third party has been overcome, we must look first to the 1966 agreement itself. An examination of the agreement reveals no indication of

---

**5.** Section 7.06 of the 1966 agreement provided that the contract "and the transactions con-

templated [herein] shall be governed by the laws of the Commonwealth of Kentucky."

an intent on the part of the promisee (SAC) to benefit RIC. A contrary intention is indicated by Section 7.02 of the agreement which provides that "[t]he terms, provisions and conditions of this agreement shall bind and benefit the parties hereto and their respective successors, legal representatives and assigns," making no reference to RIC.

It would require a strained interpretation of contractual language to support a finding that SAC intended to benefit RIC. It has been stated that such an

> attempt by a third party to become a beneficiary by strained and unusual interpretation, expanding the terms of the promise and increasing the extent of the promised performance, should always fail. Such third persons are not even "incidental" beneficiaries; they are merely "would-be" beneficiaries.
>
> 4 A. Corbin, Contracts, § 779C at 42 (1951) citing Kentucky Rock Asphalt Co. v. Fidelity and Casualty Co., 37 F.2d 279 (6th Cir. 1930).

■ Thus, if RIC can be said to be a third-party beneficiary at all, it is at best an incidental beneficiary, a category of beneficiaries having no rights under the contract. The only third parties having such rights are donee beneficiaries and creditor beneficiaries. One is a donee beneficiary if the purpose of the promisee [6] in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of an actual or supposed duty or liability of the promisee to the beneficiary. Any others who may incidentally benefit from a contract are no more than incidental beneficiaries with no enforceable rights under the contract. *See generally* 4 A. Corbin, Contracts, § 779C at 40–41 (1951), 2 S. Williston, Contracts, § 356 at 824–827 (3d ed. 1959), Restatement of Contracts § 133 at 151–52 (1932).

Plaintiff has argued that RIC may properly be considered a donee beneficiary. Plaintiff has not, however, pointed to any indication that the promisee, SAC, intended to make a gift to RIC or that the 1966 contract was made for RIC's benefit. Without such a showing, Kentucky law does not permit RIC to sue on the contract. Fidelity and Casualty Co. of New York v. Martin, 163 Ky. 12, 173 S.W. 307 (1915), Hendrix Mill & Lumber Co. v. Meador, 228 Ky. 844, 16 S.W.2d 482 (1929), International Brotherhood of Boilermakers v. Holt, 418 S.W.2d 758 (Ky.1967). Neither has there been any showing that performance of the promise would satisfy any real or asserted duty of the promisee to RIC so as to make RIC a creditor beneficiary. We therefore conclude that RIC was not a third-party beneficiary under the 1966 agreement and that it had no enforceable rights under it.

■ RIC points to the 1970 agreement as evidence that "National was at least very concerned that it might be obligated to RIC." The 1970 agreement, however, cannot enlarge the rights of RIC as set forth in the earlier agreement. The intent on the part of the promisee, SAC, must have existed at the time of the execution of the 1966 agreement. United States v. Alleutian Homes, Inc., 193 F.Supp. 571, 576 (D.Alask. 1961).

■ Summary judgment in this case for National was proper since no genuine issue of material fact was raised by plaintiff. The issue upon which the case turns is whether plaintiff had "property" which could be transferred under the 1970 agreement in violation of the Bankruptcy Act. This issue has been extensively briefed and was an appropriate one for decision by the district judge as a matter of law. The affidavit of plaintiff's attorney Palmer was insufficient to rebut the affidavit of Solomon accompanying defendant's motion for summary judgment. Plaintiff may not raise an issue of fact by merely referring to the

---

6. The relevant intent is that of the promisee who purchases the promise of the promisor.

See 4 A. Corbin, Contracts § 776 at 16, § 777 at 25 (1951).

proposed testimony of possible witnesses. Palmer in his affidavit indicates no personal knowledge of the facts relevant to the case. An affidavit stating what the attorney believes or intends to prove at trial is insufficient to comply with the burden placed on a party opposing a motion for summary judgment under Rule 56. Automatic Radio Mfg. Co. v. Hazeltine Research Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), Mercantile National Bank at Dallas v. Franklin Life Insurance Co., 248 F.2d 57, 59 (5th Cir. 1957).

Plaintiff also contends that he has met the conditions of Rule 56(f) which provides for the refusal of an application for summary judgment or the ordering of a continuance when affidavits have been shown to be unavailable for justifiable reasons.

Plaintiff, in claiming to have had insufficient time to engage in discovery, has offered one of the most common reasons for being unable to present specific facts in opposition to a summary judgment motion. We are not able to accept plaintiff's expression of surprise at defendant's position as a justification for his not having sought depositions from certain individuals. Approximately four months elapsed between the time of the filing of defendant's motion to dismiss accompanied by the affidavit of Allen B. Solomon and the entry of summary judgment by Judge Gordon.[7] In addition, plaintiff had more than a year's time from filing of the complaint until defendant filed its motion to dismiss.[8] It should have been apparent from the time plaintiff filed the action that a cause of action existed only if plaintiff could show that RIC was a third-party beneficiary. Against this background plaintiff's expressions of surprise carry a hollow ring. We find that the present case is not the type of case for which Rule 56(f) was designed. The reason asserted by plaintiff for his difficulty in obtaining opposing affidavits is that

those from whom he would take the affidavits are defendants in a case brought by plaintiff in another district. This problem is one that would have been foreseen by plaintiff if he had been diligent in securing the information necessary to his case. *See* Southern Rambler Sales, Inc. v. American Motors Corp., 375 F.2d 932 (5th Cir. 1967) cert. denied 389 U.S. 832, 88 S.Ct. 105, 19 L.Ed.2d 92.

Consideration of the authorities and arguments relied upon by plaintiff compels us to conclude that the district judge did not err in granting summary judgment. Plaintiff has not met his burden of countering defendant's motion with affidavits showing the existence of a genuine issue of material fact justifying a trial.

It is apparent therefore that the judgment must be and is hereby

Affirmed.

---

7. Defendant's motion was filed November 15, 1973. Judge Gordon's opinion and judgment were signed on March 12, 1974 and entered on March 15, 1974.

8. The complaint was filed September 15, 1972.