**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jane WOOD, Defendant–Appellant.**

No. 87–6136.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 22, 1988.

Decided June 7, 1989.

Rehearing Denied July 28, 1989.

454

D.H. Robinson argued, Robinson, Tackett and Conway, Louisville, Ky., for defendant-appellant.

Joseph Whittle, U.S. Atty., Louisville, Ky., Richard Dennis, Gary R. Allen, Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., William S. Rose, Jr., William Estabrook, John Boyle argued, for plaintiff-appellee.

Before JONES and GUY, Circuit Judges, and RUBIN, Chief District Judge.*

* Honorable Carl B. Rubin, United States District Court for the Southern District of Ohio, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

Defendant-appellant Jane Wood appeals from the district court's order granting summary judgment in favor of plaintiff-appellee United States, 658 F.Supp. 1561. The district court held that, since the Government was a third-party beneficiary to a property settlement between Ms. Wood and her then-husband, it therefore was entitled to judgment against Wood for breaching her promise to apply the proceeds of the sale of her marital residence to a federal tax lien against her former husband. For the reasons that follow, we affirm the judgment of the district court; however, we credit Wood for certain funds held by the Jefferson County (Kentucky) Circuit Court receiver.

I.

The Woods were married from 1955 until their divorce on December 10, 1984. The record shows that Mr. Wood underpaid his federal income taxes for the tax years 1980 through 1983. The Internal Revenue Service ("IRS") made timely assessments of delinquent taxes, penalties, and interest against Mr. Wood individually for those years. On September 13, 1982, notices of a federal tax lien with respect to Mr. Wood's unpaid tax liabilities amounting to $126,471 for 1980 and $41,462.66 for 1981 were recorded in Jefferson County, Kentucky. A second tax lien against Mr. Wood covering 1982 tax liabilities in the amount of $25,-347.80 was recorded on August 3, 1983.

In 1981, the Woods' residence, "Berry Hill," was mortgaged to the Bank of Louisville ("Bank"). By 1984, the mortgage was in arrears and, on February 4, 1984, the Bank commenced foreclosure proceedings against the Woods in the Jefferson County Circuit Court. On March 30, 1984, the Woods executed a property settlement agreement ("Agreement") in contemplation of their impending divorce. The Agreement required Mr. Wood to convey Berry Hill and three building lots to Ms. Wood, who was required, in turn, to sell the properties at a listed price of $715,000.00. Further, the Agreement stipulated that upon selling the property, Ms. Wood would be entitled to any sale proceeds remaining after the existing liens and mortgages were paid off. Those encumbrances included a federal tax lien in the amount of $126,-471.01 plus interest; a security mortgage to the Bank of Louisville in the amount of $115,000; and a mortgage to the First National Bank for $50,000. Shortly after the execution of the Agreement, Mr. Wood informed IRS Officer Roy Wyatt of the terms of the property settlement. The IRS accepted Mr. Wood's representation regarding Ms. Wood's obligations under the Agreement.

On July 9, 1984, the Jefferson Circuit Court entered its judgment ordering the sale of Berry Hill in order to satisfy the Woods' mortgage obligation to the Bank. On the same date, Mr. Wood conveyed Berry Hill and the three land parcels to Ms. Wood by general warranty deed. The Kentucky judgment ordered the property to be sold free and clear of all liens and encumbrances, excepting certain easements and assessments and a "right of redemption in favor of the United States ... for 120 days from the date of the Commissioner's sale pursuant to Title 28 U.S.C. § 2410(c)." J.App. at 19.

Berry Hill was sold at a public auction, held by the Commissioner of the Jefferson Circuit Court on August 21, 1984. The property was purchased by Dr. and Mrs. John J. Guarnaschelli ("Guarnaschelli's") for $205,000.00, approximately $44,000.00 more than the Bank of Louisville lien but less than two-thirds of the appraised value of the property. Because the sale price was less than two-thirds of Berry Hill's appraised value, the sale created a right of redemption in favor of Ms. Wood under Ky.Rev.Stat. ("KRS") § 426.530(1). On October 15, 1984, the Government filed a third tax lien against Mr. Wood for 1983 tax liabilities totaling $49,802.48.

The Woods executed an addendum ("Addendum") to the Agreement on December 10, 1984. The Addendum provided that Mr. Wood would quitclaim his right of redemption arising out of the judicial sale of Berry Hill and waive his interest in any proceeds realized upon Ms. Wood's sale of that prop-

erty. Thereafter, on February 12, 1985, Ms. Wood contracted to sell Berry Hill to Ina Johnson for the sum of $575,000. The sale was conditioned upon Ms. Wood securing title insurance from a reputable title insurance company. A title insurance company subsequently issued a title commitment on the condition that the Guarnaschellis secure and record a commissioner's deed for Berry Hill and, thereafter, convey the property by warranty deed to Ms. Wood.

On March 5, 1985, the Government served Ms. Wood with a Notice of Seizure of her husband's statutory right of redemption for payment of tax liabilities totaling $285,096.09. On April 19, 1985, the Government served her with a Notice of Levy on all property and rights to property which belonged to her husband and which were then in her possession, and demanded payment of tax liabilities totaling $292,571.90. Thereafter, the Guarnaschellis secured the commissioner's deed and quit-claimed Berry Hill to Ms. Wood. On April 27, 1985, Ms. Wood conveyed Berry Hill to Johnson for $575,000.

In August of 1985, the Government initiated this action against the Woods, Johnson, and the Guarnaschellis. The Guarnaschellis were dismissed from the action by agreement of the parties. The district court entered its final judgment on May 7, 1987, holding, *inter alia*, that the Government was a direct creditor beneficiary of the Agreement and ordered judgment against Ms. Wood for $126,471.01 plus interest. Although Ms. Wood moved to alter or amend that portion of the judgment adverse to her and to stay execution of the judgment, the district court denied both post judgment motions. She then filed this timely appeal.

## II.

■ Ms. Wood's first claim is that the district court erred in allowing the Government leave to amend its complaint to add a third party beneficiary claim against Ms. Wood. Although the Government filed its complaint in August of 1985, it was not until September 11, 1986, in its motion for summary judgment, that the Government raised the third party beneficiary claim against Ms. Wood. Ms. Wood then moved to strike that portion of the summary judgment motion concerning the third party beneficiary claim, and also moved for summary judgment on all other claims. The Government, in turn, filed a motion in opposition to Wood's motion to strike the third party beneficiary claim, and concurrently moved for leave to amend its complaint. In opposing the amendment, Wood did not argue that she would be prejudiced by the amendment: rather she complained that it was too late for the Government to amend its complaint since it had known of the Agreement for two years; the case was fourteen months old; the discovery period had lapsed; and the case was to be tried within three weeks. The district court rejected these arguments and granted the Government leave to amend the complaint to add the third party beneficiary claim. The court also granted the parties additional time to supplement their summary judgment papers.

The Federal Rules of Civil Procedure provide that judges may grant leave to amend pleadings freely, "when justice so requires." Fed.R.Civ.P. 15(a). The question of whether a party should be allowed to amend a pleading is left to the discretion of the district court and this court may reverse that decision only if the district court abused its discretion. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). As for Wood's argument that the district court abused its discretion, she must demonstrate that she was prejudiced by the district court's decision, or that the complaint, as amended, could not withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Id.*

Applying this standard, we reject Wood's contentions regarding the district court's decision to allow the Government to amend the complaint. Wood has made no attempt to show that she was prejudiced by the district court's decision or that the Government's amended complaint was defective under Rule 12(b)(6). Moreover, she does not assert that she had insufficient time to

conduct discovery of the Government's third party beneficiary claim; that she was unfairly surprised by the Government's change of theory; or that she had insufficient time to conform her pleadings to the Government's third party beneficiary claim. Thus, because Ms. Wood has failed to show "that the amendment adversely affects [her] posture in the litigation," *Roth Steel Products*, 705 F.2d at 155, we affirm the district court's decision to allow the Government to amend its pleading.

### III.

### A.

■ Wood's next claim is that the district court erred in determining that the Government was an intended third party beneficiary of the March 1984 property settlement agreement, rather than an incidental beneficiary of that Agreement. She argues that the Government cannot maintain an action for breach of the Agreement because the language contained therein provided no express indication that it was intended to benefit the Government. Wood further claims that the express purpose of the Agreement was not to benefit the Government, but rather to effect an amiable adjustment and settlement of certain property rights, in light of her impending divorce. Relying on the December 1984 Addendum to the Agreement, wherein Mr. Wood waived any and all rights he had to the subsequent sale of Berry Hill, Ms. Wood asserts that the Agreement did not obligate her as a promisor to Mr. Wood's tax liability.

Under Kentucky law, which we must apply to this question of contract interpretation, "all that is necessary" for an enforceable contract for the benefit of a third party "is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party." *Simpson v. JOC Coal, Inc.*, 677 S.W. 2d 305, 309 (Ky.1984). Thus, *Simpson* provides that the central issue in determining whether the contract was intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor.

Under Kentucky law, third parties having the right to enforce a contract are characterized as either "donee" or "creditor" beneficiaries. *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky.App.1985) (citing *King v. National Industries, Inc.*, 512 F.2d 29, 33 (6th Cir.1975)). The court in *King* stated that:

One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of an actual or supposed duty or liability of the promisee to the beneficiary.

512 F.2d at 33. A promise to discharge the promisee's duty to a creditor beneficiary creates a duty in the promisor to the creditor beneficiary. Therefore, a creditor beneficiary who has an enforceable claim against the promisee, as here, can get a judgment against either the promisor, the promisee, or both. *Hendrix Mill & Lumber Co. v. Meador*, 228 Ky. 844, 849, 16 S.W.2d 482, 484 (1929).

In the instant case, the Agreement contains the two requirements noted in *Simpson:* (1) consideration flowing to the promisor, and (2) intent of the promisee to exact a promise directly benefitting the third party. *Simpson*, 677 S.W.2d at 309. Under the Agreement, Ms. Wood promised to distribute the sales proceeds of Berry Hill in payment of a federal tax lien against the assets of Mr. Wood in the amount of $126,471.01 with interest thereon. In consideration for this promise, Mr. Wood conveyed Berry Hill and the three adjacent parcels of land to Ms. Wood, who was to retain the sales proceeds after the payment of the tax lien and mortgages. Moreover, the relevant intent of the promisee, Mr. Wood, is reflected by the terms of the Agreement which provided that "the parties agree that the property shall be sold ... and the net proceeds thereof shall be distributed as received as follows ... a federal tax lien existing against the assets

of the husband in the amount of $126,471.01 with interest thereon shall be paid in full." J.App. at 83. Finally, Mr. Wood's intent to exact Ms. Wood's promise for the direct benefit of the Government is evidenced by his prompt notification to IRS of the terms of the property settlement, as well as the uncontradicted affidavit of IRS Revenue Officer, Roy Wyatt, who stated that Mr. Wood "repeatedly assured the Government that the provision in [the Agreement] for payment of the tax lien from Ms. Wood's sale proceeds survived the judicial sale." *Id.* at 33. Given this evidence, we find that the Government was a creditor beneficiary under the Agreement and was entitled to enforce Ms. Wood's promise to pay her husband's tax liability under the Agreement.

### B.

■ Ms. Wood next contends that her duty to distribute any of the proceeds from the sale of Berry Hill to the Government was excused by virtue of Mr. Wood's failure to pay the Bank of Louisville mortgage. This failure precipitated the judicial sale and allegedly made it impossible for her to list and sell Berry Hill. We agree with the district court that, while it is well established that a promisor may "assert against the beneficiary any defense which he could assert against the promisee if the promisee were suing on the contract," J. Calamari & J. Perillo, *Contracts* § 17–8 (2d ed.1977), not every breach excuses the promissor from his promise to benefit the third party. *See also In re Edward M. Johnson and Associates, Inc.*, 845 F.2d 1395, 1399 (6th Cir.1988) (under Tennessee law, rights of third-party beneficiaries subject to defenses). In order to excuse a promisor from his promise to benefit the third party, the breach must be such that it destroys the subject matter of the contract or results in failure of consideration.

Applying this rule to our facts, we find that despite Mr. Wood's failure to satisfy the Bank of Louisville mortgage, the sale of Berry Hill did not result in failure of consideration or destruction of the property so as to excuse Ms. Wood's promise to distribute the proceeds from the sale of Berry Hill to the Government. Under the Agreement, in order for the Government to be paid, the only requirement was that Mr. Wood convey title in Berry Hill to Ms. Wood, and the judicial sale did not divest Ms. Wood of title or possession of Berry Hill. The district court properly found that Ms. Wood "retained title and possession of the property throughout the judicial proceedings and, as sole owner of the statutory right of redemption, could have listed and sold property at anytime within a year after the judicial sale." J.App. at 35. *See also Messer v. American Eagle Fire Ins. Co.*, 227 Ky. 3, 6, 12 S.W.2d 358, 359 (1928) (right of redemption permitted within a period of one year following judicial sale if the sale did not bring two-thirds of appraised value). Wood now attempts to counter this conclusion by claiming that even though she possessed the statutory right of redemption and still maintained the power to list the property for sale for one year following the judicial sale, "such a sale [was] virtually impossible since the IRS asserted a $285,096.09 lien as a right of redemption alleged to exist in her husband." Appellant's Opening Br. at 28. We reject this argument because, following the judicial sale, Ms. Wood did list and succeed in selling Berry Hill as required by the Agreement. Thus, Ms. Wood has not shown that Mr. Wood's breach had any effect on the subject of the Agreement or consideration under the Agreement. Accordingly, we find that Mr. Wood's breach did not excuse Ms. Wood from her promise to share the proceeds from the sale of Berry Hill with the Government.

### IV.

■ The district court held that the Government's right to receive $126,471.01 from the sale of Berry Hill survived an attempt by the Woods to rescind it. Under Kentucky law, when the right to alter, amend or rescind the contract is specifically provided or reserved therein, it may be rescinded without liability to a third party beneficiary. *See Rhodes v. Rhodes*, 266 S.W.2d 790, 792 (Ky.1953). Should an

agreement not contain an express reservation, then the parties to the contract cannot rescind the contract without the third party's consent after he has accepted, adopted or relied upon the contract. *Id.* Ms. Wood argues, however, that the district court erred in its application of Kentucky law because, despite *Rhodes*, in the case of a creditor beneficiary, a contract for the benefit of the creditor can be rescinded anytime before the creditor changes his position in reliance on the contract. Finally, Ms. Woods claims that *Rhodes* does not fully reflect applicable Kentucky law regarding modification of third party beneficiary contracts.

Although the instant Agreement did not reserve a right of rescission, on December 10, 1984 the Woods executed an Addendum to the Agreement. The Addendum provided that Mr. Wood would quitclaim to Ms. Wood his right of redemption arising out of the judicial sale of Berry Hill, and waive any future interest to any proceeds from a subsequent sale of that property. At the district court level, Ms. Wood argued that the Addendum rescinded her obligation to satisfy Mr. Wood's tax liens. Based on the uncontradicted affidavit of IRS officer Roy Wyatt, however, the district court properly held that the Government accepted Mr. Wood's representation regarding his wife's continuing obligations under the Agreement prior to the execution of the Addendum. The district court concluded that since there was no right of rescission reserved in the Agreement, since the Government was never advised of the Addendum, and since the Government accepted Mr. Wood's representation regarding its right as a third party creditor beneficiary before execution of the Addendum, the Government's right to receive payment from the sale of Berry Hill survived the Woods' attempt to rescind it.

Ms. Wood claims that *Rhodes* was not fully applicable in this case because the Addendum was executed before the Government changed its position in reliance upon the Agreement. Consequently, she contends that the Addendum effectively rescinded her obligation to pay Mr. Wood's tax liens for 1980 and 1981. In examining the record, we find that the Government changed its position in reliance upon Mr. Wood's statements regarding Ms. Wood's obligations under the Agreement. Since these statements were made before the Addendum was executed, the Government's reliance occurred prior to the attempted rescission. We base our conclusion on the terms of paragraph 1(a) of the Agreement, and the representations made by Mr. Wood to the IRS concerning payment of the liens by Ms. Wood after the sale of Berry Hill. In addition, even though Kentucky characterizes direct third party beneficiaries as either "donee" or "creditor" beneficiaries, *King v. National Industries, Inc.*, 512 F.2d at 32–33, there is no distinction between donee and creditor beneficiaries for purposes of rescinding a third party benefit. In both instances the power to rescind a contract made for the benefit of a third party terminates upon the third party's acceptance. *Jones v. Higgins*, 80 Ky. 409, 413 (1882) (creditor beneficiary "agreement may be cancelled by the act of the parties making it before acceptance by the party for whose benefit it was made"); *Rhodes*, 266 S.W.2d at 792.

Finally, Ms. Wood argues that *Rhodes* is not fully applicable to this case because there is a split in authority concerning whether a third party beneficiary right becomes vested by merely accepting the contract, or whether the beneficiary must establish some reliance on the contract. *Compare* Restatement (First) of Contracts § 143 (1932) *with* Restatement (Second) of Contracts § 311 (1981). Wood argues that the position of the original Restatement, that the creditor's reliance is necessary to negate the power of the promisee to rescind her promise, will probably be adopted by the Kentucky Supreme Court, and that *Rhodes* is therefore the incorrect rule. We reject this latter argument because the position of the Second Restatement, stating that creditors' rights vest upon their learning of the contract and assenting to it, represents the majority view among the states, *see, e.g., Detroit Bank & Trust v. Chicago Flame Hardening*, 541 F.Supp. 1278, 1283 (N.D.Ind.1982), and because

Kentucky law appears to be consistent with this position. *Jones*, 80 Ky. at 413. We decline to follow the Seventh Circuit's holding in *Price v. Pierce*, 823 F.2d 1114, 1121–22 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988), in which the court adopted and applied the "reliance" position as federal common law. The instant case turns upon state law rather than federal common law; therefore *Price* is inapplicable. For these reasons, we conclude that there was no rescission of the Government's right to receive the benefit promised it under the Agreement.

### V.

■ The last argument advanced by Ms. Wood is that the district court erred in failing to sustain her motion to amend the judgment on the ground that it did not reflect certain credits which should have operated to reduce her liability. Specifically, she contends that the sum of $43,202.90 currently being held in Jefferson Circuit Court and the $75,000.00 appraised value of the three lots which were conveyed to her should have been offset against the district court's judgment. The district court rejected Ms. Wood's motion to amend because of its view that, absent a showing of affirmative misconduct, the Government cannot be estopped from collecting the full amount under the Agreement.

On appeal, Ms. Wood claims that even if this court affirms the liability judgment of the district court, the court's order denying her Rule 59(e) motion to alter or amend the judgment should be reversed. We agree. Since the Government had the sum of $43,-202.90 available to it for payment of the tax lien, we find that the judgment against Ms. Wood should have been credited by that amount. Accordingly, the judgment of the district court is AFFIRMED in part and REVERSED in part, and the district court is instructed to credit the judgment against Ms. Wood by the sum of $43,-202.90.