CASE 83—ACTION TO RECOVER DAMAGES FOR BREACH OF A COVENANT
IN A LEASE.—FEB. 13.

# Louisville & N. R. R. Co., &c. v. Schmidt, &c.

APPEAL FROM SHELBY CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.    AFFIRMED.

RAILROADS—MORTGAGE AND LEASE—SEVERAL WRITINGS CONSTRUED TO-
GETHER AS ONE CONTRACT—FAILURE OF LESSEE TO SURRENDER
ROAD IN GOOD REPAIR—LIABILITY TO MORTGAGE BONDHOLDERS.

Held:   1. Where one railroad company executed to another a lease
of its unfinished road, and executed, also, a mortgage thereon to
secure bonds which it delivered to the lessee for sale to raise
money to complete the road, the lessee executing a mortgage
on earnings to the trustee for bondholders, the three writings,
which were executed simultaneously, are to be read together as
one contract.

2. The trustee for bondholders may sue the lessee to recover dam-
ages for breach of its covenant to restore the leased premises to
the lessor in good repair, the undertaking being for the ben-
efit of bondholders.

3. Though the undertaking to restore the premises to the lessor in
good repair at the termination of the lease was qualified by the
addition of the words, "unless prevented by unavoidable casualty,
-legal proceedings or operation of law," the lease is not suscep-
tible of the construction that the lessee was not to turn over
the property in good repair in case the lease was terminated by
the sale of the property under foreclosure proceedings.

4. The fact that the lessor fell in debt to the lessee does not ex-
clude the latter from liability to the bondholders; the covenant
being for their benefit, and the trustee for them being a party
to the contract.

5. A judgment in favor of the lessee against the lessor, rendered
about five years before the property was restored to the lessor,
by which it was, in effect, determined that the lessee had nŏt
then failed to keep the property in repair, constitutes no de-
fense to the action for failure to turn over the property in
good repair.

HELM, BRUCE & HELM, FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. A mortgagee can not maintain an action against the tenant of his mortgagor on a covenant in the tenant's lease by which he agrees to restore the property to his landlord in good order at the termination of the lease.

2. One not entitled to the possession of the property at the termination of the lease can not maintain an action on such a covenant.

3. According to the modern doctrine in Kentucky, both at law and in equity, mortgages are now treated in this State as mere securities, the mortgagee is not entitled to possession, but the mortgagor is regarded as the real owner of the property and entitled to the possession until foreclosure and sale, when the purchaser becomes entitled to the possession. Bartlett v. Borden, 13 Bush, 45; Douglass v. Cline, 12 Bush, 608, 621.

4. Even where the mortgage in express terms gives to the mortgagee the right to enter and take possession of the mortgaged property in case of default, yet unless this right is strictly pursued and possession taken in the manner prescribed by the mortgages, it makes no change in the status of the parties, but leaves them as if such clause had been wholly omitted from the mortgage. Douglass v. Cline, 12 Bush, 621; Gilman v. Ill. & Miss. Tel. Co., 91 U. S., 613, 616; American Bridge Co. v. Heidelback, 94 U. S., 800; U. S. Trust Co. v. Wabash R. R. Co., 150 U. S., 287, 308.

5. A mortgagee can not maintain an action against the tenant of his mortgagor on the tenant's covenant to pay rent to the mortgagor as his landlord. Price v. Smith, 1 Green's Chan (N. J.) 516, 518; M'Kircher v. Hawley, 16 Johnson (N. Y.) 289, 292; Teal v. Walker, 111 U. S., 248.

6. A mere holder of an equity in property, such as the holder of a bond for title (or such as a mortgagee under the modern doctrine) can not maintain an action against a tenant of the property on his covenant to return the same in good order at the termination of the lease to his landlord, who is the owner and holder of the legal title.    Patton v. Robinson, 1 Bibb, 285, 287.

7. A mortgagee can not hold his mortgagor liable for damages for a mere failure to have the property in good repair at the time of foreclosure and sale, and *a fortiori* he can not hold the tenant of the mortgagor thus liable.

8. Where the lease provides that the tenant's covenant to re-

store the property in good order to the landlord at the termina-
tion of the lease shall be excused if prevented by inevitable
casualty, legal proceedings or operation of law, a foreclosure and
sale of the property under a mortgage excuses the tenant from
a performance of the covenant, and shows certainly that he was
not intended to be held liable on the same to the mortgagee
after such foreclosure and sale.

SIMRALL & DOOLAN, FOR APPELLEES.

W. S. PRYOR AND BECKHAM & BECKHAM, OF COUNSEL.

This appeal is taken from a judgment rendered by the Shelby
circuit court at the September term, 1900, against the appellants
for the sum of $25,000 assessed by a jury as damages accruing to
appellees from the *breach of a covenant made to them by the
appellants* for the restoration in good repair of certain mort-
gaged railroad property at the termination of a lease thereon held
by the appellants.

Counsel for appellants in their brief have adroitly argued this
case *as if there were no contract* relation or covenant between the
appellants and the appellees upon which a right of action for
failure to restore the mortgaged premises in good repair could
be maintained. Out of eight propositions laid down by appel-
lant's counsel, at least seven are mere abstractions and have no
application to this case, because of the special contract relations
which we shall show by the decisions of this court, exist between
the appellants and the appellees.

#### POINTS MADE AND AUTHORITIES CITED.

It has been held by this court and by the supreme court of the
United States in litigation between the parties to this appeal
upon the identical contracts involved in this suit that the
covenants contained in the lease in question form a part of a
tripartite agreement for the protection and security of the ap-
pellees, and that the appellees have a right of action thereon
against appellants.

Schmidt v. L. & N. R. R. Co., 95 Ky., 289; Schmidt v. L.,
C. & L. Ry. Co., 99 Ky., 143; Schmidt v. L., C. & L. Ry. Co.,
19 Ky. Law Rep., 1635; Schmidt v. L. & N. Ry. Co., 101 Ky.,
441; L. & N. R. R. Co. v. Schmidt, 20 Ky. Law Rep., 456;
L. & N. R. R. Co. v. Schmidt, 20 Ky. Law Rep., 561; L. &
N. R. R. Co. v. Schmidt, 20 Ky. Law Rep., 810; L. & N. R.
R. Co. v. Schmidt, 21 Ky. Law Rep., 556; L. & N. R. R.
Co. v. Schmidt, 177 U. S., 230; L. & N. R. R. Co. v. North-
ern Division C. & O. R. R. Co., 21 Ky. Law Rep., 1126, 1409.

W. S. PRYOR, FOR APPELLEES.

This is too plain for argument—the right of the bondholder to maintain the action. But, says counsel, you can make us operate the road, but you can not make us place it in a condition of repair that will enable us to operate it, and, therefore, we will abandon the road because it is in bad repair, and when you bring your suit for damages we will urge that the covenant to repair is only one existing between landlord and tenant. If the covenants in the various agreements to operate the road are for the benefit of all, why is not the covenant to keep it in repair for that purpose for the benefit of all? Can it be said if there had been no covenant to repair in any of the writings, therefore the covenant to operate the road did not embrace any obligation to repair it? Certainly not.

The covenant to operate the road was enforced by the chancellor in this very case, and the right, as well as power, to keep it in repair necessarily became a part of that covenant, and when the road abandoned all of its contracts and refused to comply with any of the agreements, it became liable to the bondholders for damages sustained. The road brought but a trifling sum, paying the bondholders scarcely the cost of the litigation, and there would be neither law, equity or good morals in lessening their liability and placing the loss on these appellees.

This case has been in all the courts, from the lowest to the highest—some eight or nine contentions on the part of the railroad company to avoid liability. The appellants' in every instance contending that the bondholders were mere mortgagees, with no other rights, and that the tripartite agreement was never intended for the protection of the bondholders.

The courts have invariably held otherwise, and we refer the court to the able brief of senior counsel in this case, where there is a reference to all the decisions affecting this question.

We do not understand that the judgment for damages is assailed in the event the action can be maintained, and if so a careful reading of the record will show that the appellee was entitled to recover largely in excess of the verdict. We ask for an affirmance of the judgment, and an end to this litigation.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

In the year 1879 an arrangement was made by which the Louisville, Cincinnati & Lexington Railway Company took a lease for 30 years upon the Northern Division of the Cumberland & Ohio Railroad, which was then unfinished,

and the latter company. executed a mortgage to secure $250,000 of bonds. The bonds were delivered by the Cumberland & Ohio Railroad Company to the Louisville, Cincinnati & Lexington Railway Company for sale, and the proceeds of the sale were to be used by it in the construction of the railroad. It was stipulated in the lease to the Louisville, Cincinnati & Lexington Railway Company that it should take all the property of the Cumberland & Ohio Company, and operate the road for 30 years; and, as additional security for the bonds, it mortgaged to the trustee for the bondholders certain earnings on its own lines from business coming to it from the leased line. The lease from the Cumberland & Ohio, the mortgage made by it, and the mortgage made by the Louisville, Cincinnati & Lexington Company to the trustee for the bondholders, were all executed for the same purpose, and were delivered simultaneously. It has been held by this court several times that these three papers, executed cotemporaneously, not only for the benefit of the lessor and the lessee, but also for the benefit of the bondholders, must be read together, as one contract. Schmidt v. Railroad Co., 95 Ky., 290 (15 R., 785) (18 R., 65) 25 S. W., 494, 26 S. W., 547; Schmidtz v. Same 101 Ky., 441 (19 R., 666) 41 S. W., 1015; Railroad Co. v. Schmidt, 52 S. W., 835 (21 R., 556); Louisville & N. R. Co. v. Northern Division of Cumberland & O. R. Co., 21 R., 1126, 54 S. W., 5. The three papers are copied in full in the case of Schmidtz v. Railroad Co., 101 K., 441, supra, and need not, therefore, be set out here.

After the contract was made, the Louisville & Nashville Railroad Company bought out the Louisville, Cincinnati & Lexington Railroad Company, and so succeeded to all its rights under it.

By the fourth clause of the lease the road is to be con-
structed a first-class, single-track railway. See 101 Ky.,
445 supra. By the sixth clause of the lease (101 Ky., 446),
it is stipulated that the lessee will make to the lessor quarter-
ly returns, giving full details of earnings and operating
expenses, including the expense of keeping the roadbed in
order; and the net profits arising therefrom shall be ap-
plied to the payment of interest, and the creation of a sink-
ing fund for retiring the mortgage bonds. 101 Ky., 446,
supra. By the tenth clause, at the termination of the lease
the leased premises were required to be restored to the
lessor in good repair, unless prevented by unavoidable cas-
ualty, legal proceedings, or operation of law. See 101 Ky.,
448, supra. By previous clauses of the lease, the issue of
the bonds, the making of the mortgages, and the purpose
for which the money was to be used, are specifically set out.

It has been held in the cases above referred to that bond-
holders might maintain an action against the lessee to re-
cover the net earnings under the lease which had not been
paid over pursuant to its terms. This action was brought
by them against appellant, the Louisville & Nashville Rail-
road Company, the successor of the original lessee, to re-
cover the damages for the failure by it to turn over the
property in good condition at the termination of the lease.
Judgment was recovered in the trial court for $25,000. It
is not insisted that the verdict is excessive, nor is there any
complaint of any of the instructions of the court, if the
action can be maintained. It is insisted that a peremptory
instruction should have been given the jury to find for the
defendant on the ground that the tenant is not liable to the
mortgagee for damages for noncompliance with his contract
to repair contained in the lease between him and his land-
lord. The same point was made on demurrer to the peti-

tion, and numerous authorities are cited to sustain the rule relied on. Teal v. Walker, 111 U. S., 248, 4 Supt. Ct., 420, 28 L. Ed., 415; Price v. Smith, 2 N. J. Eq., 516; McKircher v. Hawley, 16 Johns., 289; Patton v. Robinson, 4 Ky., 285. The rule is undoubtedly sound. The only question to be decided is whether the case comes within it. The three contracts referred to have been called by this court a "tripartite agreement." The object was to raise money to complete the road. To do this, the bonds must be so secured as to be salable in the market. For the security of the bonds the tripartite contract pledged, in the first place, the net earnings of the road in the hands of the lessee; also the net earnings of the lessee's own road from business coming over the mortgaged road. These, it was assumed, would meet the interest, and create a sinking fund for the payment of the principal, of the bonds. But as a further security to the bonds it was important that the corpus of the property which was leased for 30 years should be kept in repair, and that at the termination of the lease it should be restored to the lessor in good repair. No stipulation of the tripartite contract was more essentially for the benefit of the bondholders than the clauses which provided for the preservation of the mortgaged property. For, if the corpus of the property was wrecked or ruined, the security upon which the bonds were sold might be in a great measure destroyed. The rule in this State is that a party may sue upon a contract made with another for his benefit. Garvin v. Mobley, 1 Bush, 48; Allen v. Thomas, 3 Metc., 198, 77 Am. Dec., 169; Smith v. Smith, 5 Bush, 625; Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340 (11 R., 738) 12 S. W., 554, 13 S. W., 249, 7 L. R. A., 77, 25 Am. St. Rep., 536. The bondholders were allowed to sue for the profits which had been earned and not paid over, on the ground

that these covenants were for their benefit, and, being for their benefit, they should be allowed to enforce the contract by action. The covenant to repair stands on the same ground; the mortgage to the bondholders and the lease being all one transaction, and the lease being as much for their security as the mortgage. We do not think the lease is properly susceptible of the construction that the lessee was not to turn over the property in good repair in case the lease was terminated by the sale of the property under foreclosure proceedings. For the foreclosure proceedings were provided for in the tripartite agreement, and the sale of the property thereunder would be a termination of the lease, within the meaning of its provisions. The covenant being for the benefit of the bondholders, the fact that the Cumberland & Ohio Railroad Company fell in debt to the lessee does not exclude it from liability to them, for the injury to them is in the destruction of the security on the faith of which their money was borrowed. The insolvency of the mortgagor makes the preservation of the mortgaged property the more important to the mortgagee. If the contract to turn over the mortgaged property in good repair was purely between the lessor and lessee, then the action for the nonperformance of the contract would have to be brought in the name of the lessor, and a set-off against him would be available. But where the mortgagee is a party to the contract between the lessor and lessee, and the stipulation is made for his benefit, and his money has been obtained upon the faith of it, a different rule must apply; for in such a case he is not a stranger to the contract, and the lessor and lessee can not, after his rights have been acquired, destroy his security without his consent.

It is shown for appellant that in January, 1895, it obtained a judgment against the Cumberland & Ohio Railroad

Company by which it was, in effect, adjudged that it had not, up to that time, failed to keep the property in repair. This is no defense to the action, which is for failure to turn over the property in good repair at the termination of the lease in March, 1900. The question is not in what repair the property was in the year 1895, or in any previous year. The only question is, was it in proper repair when turned over in March, 1900? The action is not for failure to keep in repair during the running of the lease, but for failure to turn over the property in repair at its termination.

Judgment affirmed.