## Klenekole Mining Co. et al. v. Lusk et al.

### (Four Cases)

(Decided June 10, 1932.)

DYSARD & TINSLEY, W. W. REEVES, and C. F. KELLY for appellants.

WOOTTON & WOOTTON for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

On July 20, 1917, Joseph Lusk executed to W. J. Roberts a coal lease on a tract of land in Perry county. The lease was for a term of twenty-five years, with the privilege of renewal. By the terms of the lease the royalty for the first year was 10 cents a ton on the

amount of coal actually mined and shipped, but thereafter a minimum royalty of $2,500 a year was to be paid. Roberts assigned the lease, on August 16, 1917, to the Klenekole Mining Company, which entered upon the land that fall and began the work. It continued to operate the mine until February 23, 1921, when it assigned the lease to the Commercial Mining Company, which operated the lease until December 16, 1925, when it contracted with Ernest Bray, who operated the mine under it until August 16, 1926, when that company went into the hands of a receiver and he took charge of the mine and began to operate it. Joseph Lusk brought this suit on October 25, 1926, against the two companies above named and Ernest Bray to recover a balance of royalty due to him, amounting to $938.50, also $1,000 for coal used at the mine and not shipped, $1,000 for hauling other coal over his land, and $1,500 for timber cut on his land.

On April 23, 1920, W. B. Lusk executed a similar coal lease to George S. Clark, etc., who assigned it to the Klenekole Mining Company, and it entered under that lease and began work. The two tracts adjoined and comprised over 350 acres. By the terms of this lease a minimum royalty of $2,000 was to be paid. The lease took the same course as the Joseph Lusk lease. On September 4, 1926, W. B. Lusk brought this suit against the same parties to recover $4,000 of minimum royalty.

The Klenekole Mining Company filed answer denying the allegations of the petition, and pleaded this clause in the leases: "It is further agreed that if at any time the lessee shall be prevented from carrying on mining operations by reason of any epidemic, riot, strike, insurrection or war, car shortage, or the failure of a workable supply of coal in said leased premises without fault or negligence of the lessee, then the minimum royalty with which the lessee is charged for the year, including such period, shall be reduced in proportion to the amount of time lost by reason of such interruption."

It pleaded that time had been lost by reason of car shortage and the failure of a workable supply of coal in the leased premises without fault or negligence of the lessee, and that it had paid in minimum royalties a large amount, more than it owed. It pleaded the

overpayment as a counterclaim and prayed judgment therefor. The two cases were consolidated. A large amount of proof was taken, and on January 7, 1930, judgment was entered in favor of W. B. Lusk against the Klenekole Mining Company for $4,000, with interest, also in favor of J. E. Lusk for $768.71, with interest, and no judgment was entered against the Commercial Coal Mining Company or Ernest Bray. The Klenekole Mining Company prayed an appeal, which was granted.

At a subsequent day of the term the court entered the following modification of the judgment:

"It appearing to the court that in entering the final judgment herein the same directed and adjudged a lien upon the equipment and mining machinery of the defendant, Klenekole Mining Company, to secure the payment of the amount of money adjudged to the plaintiffs Lusk against the said Klenekole Mining Company, and the plaintiffs and defendants herein agreeing that the adjudication of said lien is unnecessary in that there was an agreement among all the parties hereto and the John P. Gorman Coal Company, lessee of all the parties hereto, that in event judgment in these actions are obtained by the plaintiffs they shall have a lien upon the royalty going to the Klenekole Mining Company from the John P. Gorman Coal Company, and that the said John P. Gorman Coal Company would pay the 5c per ton royalty and the $200.00 per month minimum agreed to be paid by it in said lease to the Klenekole Mining Company to the Lusks in order to satisfy any judgment they might obtain.

"It is, therefore, adjudged by the court and agreed by the parties hereto that the said Lusks be and they are hereby given a lien upon the said 5c per ton royalty and $200.00 per month minimum being paid by the said John P. Gorman Coal Company to the Klenekole Mining Company, to secure the payment of the judgments granted herein to the plaintiffs against the Klenekole Mining Company."

The reason for this order was that, while the actions were pending, on March 19, 1927, a written contract was made between the parties to the actions and

the John P. Gorman Coal Company by which the land was leased to that company, and it was to pay J. E. Lusk and W. B. Lusk a royalty of 10 cents a ton and a minimum royalty of $1,200. This provision was added:

"It is understood, however, that in the event J. E. Lusk or W. B. Lusk obtain any judgments in said actions in addition to their rights under the old leases, they shall have a lien upon the royalty going to the Klenekole Mining Company from the John P. Gorman Coal Company, after judgment is rendered, and it is hereby agreed among all of the three parties herein that the said John P. Gorman Coal Company will pay the five cents per ton royalty and the $200.00 per month minimum to the said lessors to apply upon the said judgment or judgments until same shall have been satisfied."

The contract was filed in the action before the submission of the case.

After the judgment was entered, the plaintiffs had an execution issued on it and levied on the mine property, and at the sale on August 30, 1930, Ada McGlone became the purchaser for $6,380.72. The defendants moved the court to quash execution and set aside the sale. The following stipulation was filed:

"The plaintiffs having had an execution issued on the judgments rendered herein, in the Perry circuit court, and the property of Klenekole Mining Company having been sold by the sheriff of Perry county on August 11, 1930, and having been bid in by Ada McGlone, and she having executed bond, with H. R. Dysard as surety, the two bonds being in the sum of $6,380.72, due in six months, it is now agreed and stipulated that this bond is, because of the hereinafter agreement, acknowledged satisfied and the clerk of the Perry circuit court, and the sheriff of Perry county, are directed to take no further steps thereon, but to disregard same so far as their records are concerned and acknowledge the same satisfied.

"In consideration of the foregoing agreement it is stipulated that if the judgment of J. E. Lusk against the Klenekole Mining Company is affirmed by the Kentucky Court of Appeals, that the Klenekole Mining Company will pay thereon damages in the sum of ten per cent.; and if the judgment of

W. B. Lusk against Klenekole Mining Company is affirmed that the Klenekole Mining Company will pay thereon a penalty of ten per cent.

"It is agreed that copies of this stipulation be filed in the office of the Clerk of the Court of Appeals and in the office of the Clerk of the Perry circuit court; that each shall be treated as an original and shall be and remain in full force and effect, in the event the judgments are affirmed by the Kentucky Court of Appeals; the judgment and costs, and damages, to be paid out of the royalties paid by the John P. Gorman Coal Company to the Klenekole Mining Company, in the event of an affirmance by the Kentucky Court of Appeals of these judgments. If and when these judgments are affirmed.

"This shall be an order and a direction to the John P. Gorman Coal Company to pay pro rata upon these judgments the sum now in its hands, due the Klenekole Mining Company, and the sums to come into its hands due the Klenekole Mining Company, until the full amount of these judgments, together with interest, cost and damages are paid in full."

The court overruled the motion to quash the execution and set aside the sale, and from this judgment the Klenekole Mining Company appeals.

1. *As to the Judgment on the Merits in the Actions.* It is earnestly insisted for the appellant that the plaintiff's petition is insufficient, in that it does not show liability on the part of the Klenekole Mining Company to pay the royalty, as it was not a party to the original contract of lease. A general demurrer was filed to the petition, but it was never passed on by the court, and the court was not called upon to do so, so this question was waived. In the answer to the defendants, after the setting out of the assignments of the lease, there is this averment: "They say it is true that the lessees agreed to pay the plaintiff, Joseph Lusk, a minimum royalty of $2,500.00 per year for the second and each succeeding year after the date of said lease." There are similar averments in the amended answer and also in the answer to the petition of W. B. Lusk. By section 18 of the Civil Code of Practice every action may be prosecuted in the name of the real

party in interest, and under this provision of the Code the well-settled rule in this state is that a party may sue upon a contract made with another for his benefit. L. & N. R. R. Co. v. Schmidt, 112 Ky. 717, 66 S. W. 629, 23 Ky. Law Rep. 2097, and cases cited. The promise of the assignee of the lease, when he accepted the assignment of it, to pay the royalties to the lessor, was a contract for the benefit of the lessor, and under the well-settled rule he may sue upon it in his own name.

It is also earnestly insisted that the judgment upon the counterclaim is palpably against the evidence. There was proof for the defendant to the effect that the roof of the mine was poor and often broke down; that there were large lumps of stone in the coal which had to be taken out, and that, when they had mined for some distance in the side of a mountain, they came to a sandstone ledge which interfered with further progress, and in this way much time was lost.

On the other hand, there was proof for the plaintiffs that the coal ran from 45 inches to 54 inches in thickness, and was as free of the troubles indicated as the ordinary run of mines. It was also shown that the Klenekole Mining Company had no trouble while it held the lease; also that Bray, under his contract, had no trouble, and that the John P. Gorman Coal Company, which operated the mine after it came out of the hands of the receiver, had no trouble in getting out more coal than required for the minimum royalty. There was evidence also that, in the exercise of ordinary care, the sandstone obstruction could have been avoided by putting in an entry on the other side.

In such cases the court does not disturb the finding of the chancellor on the facts where the mind is left in doubt as to the truth. On the whole case here the weight of the evidence sustains the judgment of the chancellor.

2. *As to the Judgment on the Motion to Set Aside the Sale.* It will be observed that by the stipulation the bonds executed by the purchaser are acknowledged satisfied, and it is stipulated that no further steps are to be taken thereon. It is also stipulated that, in case the judgments above referred to are affirmed on appeal, the appellants will pay damages in the sum of 10 per

cent., and that this stipulation shall remain in full force and effect in the event the judgments are affirmed by the Court of Appeals, and in that event the judgments are to be paid out of the royalties due by the John P. Gormany Coal Company to the Klenekole M i n i n g Company.

As the above judgments are now affirmed by this court, this agreement becomes final and remains in full force. The bonds of the purchaser have been canceled, and, on the return of the case to the circuit court and a showing made of the above facts, the sale may be set aside. But there was no error in refusing to set the sale aside, as the case was presented to the circuit court heretofore.

The judgment in the original action is affirmed, with 10 per cent. damages. The judgment refusing to set the sale aside is affirmed, but subject to the right of appellee to have the sale set aside on a proper showing after this judgment becomes final.