**UNITED STATES of America, Plaintiff,**

v.

**Charles WOOD, Jane Wood, John J. Guarnaschelli, Martha D. Guarnaschelli, and Ina B. Johnson, Defendants.**

Civ. A. No. 85–0815–L(J).

United States District Court,
W.D. Kentucky,
Louisville Division.

May 6, 1987.

Charles A. Baer, Trial Atty., Tax Div., U.S. Justice Dept., Joseph M. Whittle, U.S. Atty., Richard Dennis, Asst. U.S. Atty., W.D. Ky., for plaintiff.

D.H. Robinson, Robinson Tackett & Conway, Louisville, Ky., for Jane Wood.

Glenn L. Schilling, Schilling & Schilling, Louisville, Ky., for Charles Wood.

W. Plumer Wiseman, Jr. and Richard J. Emmett, Greenebaum Doll & McDonald, Louisville, Ky., for Ina Johnson.

Irwin G. Waterman and Robert V. Waterman, Morris Garlove Waterman & Johnson, Louisville, Ky., for John & Martha Guarnaschelli.

## MEMORANDUM OPINION

JOHNSTONE, Chief Judge.

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff United States of America (the Government), Defendant Jane Wood (Mrs. Wood), and Defendant Ina B. Johnson (Mrs. Johnson). The Government brings suit under the internal revenue laws of the United States, 26 U.S.C. §§ 1–9602, to collect unpaid taxes, interest, and penalties owed by Defendant Charles Wood (Mr. Wood) through the foreclosure of federal tax liens on property known as Berry Hill—a residence located in Jefferson County, Kentucky, which at one time or another has been owned by each of the defendants. The action was commenced pursuant to 26 U.S.C. §§ 7401 & 7403; jurisdiction lies in this Court pursuant to 26 U.S.C. §§ 7402 & 7403 and 28 U.S.C. §§ 1340 & 1345; venue is in this Court pursuant to 28 U.S.C. § 1396.

### A. Facts

The instant action arose following the judicial sale of Berry Hill, the former residence of Mr. and Mrs. Charles Wood, pursuant to a judgment entered by the Jefferson Circuit Court ordering the enforcement of liens issued to secure monies adjudged due under a mortgage held by the Bank of Louisville. The parties' pleadings are in agreement on or have otherwise established the following facts:

1. On September 13, 1982, the Government filed a Notice of Federal Tax Lien

against Mr. Wood in the land records of Jefferson County, Kentucky. The lien recorded unpaid tax assessments totaling $85,008.35 for 1980 and $41,462.66 for 1981 against "all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue." A second tax lien covering 1982 tax liabilities totaling $25,347.80 was filed on August 3, 1983.

2. On February 8, 1984, the Bank of Louisville filed the above referenced action in which Mr. and Mrs. Wood and the Government were named as defendants.

3. On March 30, 1984, Mr. and Mrs. Wood executed a property settlement agreement requiring Mr. Wood to convey Berry Hill to Mrs. Wood, and requiring Mrs. Wood to sell the property thus conveyed at a listed price of $715,000.00. The agreement stipulated that upon sale of the property, Mrs. Wood would be entitled to any sale proceeds which might remain after paying off existing liens and mortgages which included "a federal tax lien ... in the amount of $126,471.01 with interest thereon", a first mortgage lien to the Bank of Louisville, and a mortgage to First National Bank. The agreement further stipulated that Mr. Wood was to make payments on the first mortgage lien pending sale of the property. Mr. Wood later informed Internal Revenue Officer Roy Wyatt of the terms of the property settlement.

4. On July 9, 1984, the very day that the Jefferson Circuit Court entered its judgment ordering the sale of Berry Hill, Mr. Wood conveyed Berry Hill to Mrs. Wood by general warranty deed. The judgment ordered the property "sold free and clear of all liens and encumbrances" excepting certain easements and assessments and a "right of redemption in favor of the United States of America for 120 days from the date of the Commissioner's sale pursuant to Title 28 U.S.C. § 2410(c)."

5. On August 21, 1984, Berry Hill was sold at public auction to Dr. and Mrs. John J. Guarnaschelli on a bid of $205,000, approximately $44,000 more than the Bank of Louisville lien but less than two-thirds the appraised value of the property. The sale thus created a right of redemption under KY.REV.STAT. § 426.530(1) which provides:

> If real property sold in pursuance of a judgment or order of a court, other than an execution, does not bring two-thirds of its appraised value, the defendant and his representatives may redeem it within a year from the day of sale, by paying the original purchase money and ten percent (10%) per annum interest thereon.

Mrs. Wood continued to live at Berry Hill after the judicial sale, remaining there until she sold the property to Mrs. Johnson in April 1985.

6. On October 15, 1984, the Government filed a third tax lien against Mr. Wood for 1983 tax liabilities totaling $49,802.48, bringing total assessments under the liens (less penalties, interest, and costs) to $201,621.29. (A fourth tax lien, recording unpaid tax assessments for the years 1980, 1981, 1982, and 1983 totaling $195,753.69, was filed in Indiana on February 6, 1985. The discrepancies between the figures set forth in the Kentucky liens, the Indiana lien, and the Complaint may be explained by adjustments made for payments by Mr. Wood and by the continual accrual of interest, penalties, and costs.)

7. On December 10, 1984, Mr. and Mrs. Wood executed an addendum to their property settlement agreement whereby Mr. Wood quitclaimed his right of redemption, if any, arising out of the judicial sale of Berry Hill and by which he waived all interest in proceeds realized upon any subsequent sale of the property.

8. On February 12, 1985, Mrs. Wood entered into a contract for the sale of Berry Hill to Mrs. Johnson for the sum of $575,000 conditioned upon Mrs. Wood first securing such title as could be insured by a reputable title insurance company. On March 4, 1985, the Commonwealth Land Title Insurance Company issued a title commitment on condition that the Guarnaschellis, the purchasers at the judicial sale, secure and record a Commissioner's Deed for Berry Hill and in turn convey the property to Mrs. Wood by warranty deed.

9. On March 5, 1985, the Government served Mrs. Wood with a Notice of Seizure

of her husband's statutory right of redemption for payment of tax liabilities totaling $285,096.09. Several weeks later, on April 19, 1985, the Government served Mrs. Wood with a Notice of Levy on all property and rights to property which belonged to her husband and which were then in her possession, and demanded payment of tax liabilities totaling $292,571.90.

10. Following negotiations between Mrs. Wood and the Guarnaschellis in which Mrs. Wood claimed a present ability to redeem the property, Dr. & Mrs. Guarnaschelli agreed to secure a Commissioner's Deed for Berry Hill and to quitclaim the property to Mrs. Wood in exchange for a sum equal to their $40,000 deposit plus interest expenses incurred since the judicial sale. On April 22, 1985, the Guarnaschellis secured the Commissioner's Deed and, as agreed, immediately conveyed the property to Mrs. Wood. Later that day, Mrs. Wood conveyed Berry Hill to Mrs. Johnson for $575,000.

11. On August 15, 1985, the Government filed the instant action against Mr. and Mrs. Wood, Mrs. Johnson, and the Guarnaschellis alleging an "elaborate, sophisticated attempt to evade federal tax liens." On November 12, 1985, the Guarnaschellis were dismissed by agreement of the parties.

### B. Arguments

The Government argues that it is entitled to a judgment against Mr. Wood for tax liabilities totaling $291,839.52, plus additional statutory interest and penalties that have accrued since July 15, 1985. The Government further argues that Mrs. Wood, as holder of the proceeds of the sale of Berry Hill, and Mrs. Johnson, as owner of the property, are liable for the judgment because the tax liens which attached to Berry Hill later attached to a right of redemption which arose in Mr. Wood, followed that right into Mrs. Wood's hands, and reattached to the property when Mrs. Wood exercised that right. Accordingly, the Government now seeks to foreclose on the property and on the proceeds of the sale thereof. The defendants counter that the judicial sale stripped the tax liens from the property and left the Government with nothing but a 120 day right of redemption

which it lost through inaction. They reject the Government's contention that Mr. Wood's "lien infected" right of redemption merged with Mrs. Wood's right, and argue that even if a merger did occur, it affords the Government nothing for Mrs. Wood never exercised that right.

In addition to the foreclosure claim, the Government contends that the defendants' conveyances should be set aside as fraudulent and claims that Mrs. Wood and Mrs. Johnson are liable for the tortious conversion of property subject to federal tax liens. The Government's complaint contains additional claims against Mrs. Wood for failure to surrender her husband's alleged right of redemption in accordance with the Notice of Seizure and for failure to turn over the proceeds of the sale of Berry Hill in accordance with the Notice of Levy. Finally, the Government claims damages as a third party creditor beneficiary of the March 30, 1984 property settlement agreement in which Mrs. Wood agreed to pay off a part of her husband's tax liabilities with proceeds from the sale of Berry Hill.

The summary judgment claim against Mr. Wood will be considered first, the foreclosure claim second, the fraudulent conveyance, tortious conversion, and levy claims third, and the third party beneficiary claim last.

### C. Analysis

#### 1. Tax Liabilities of Charles Wood

■ The record reflects that the Government made repeated assessments and filed numerous liens against Defendant Charles Wood for tax liabilities incurred for the years 1980, 1981, 1982, and 1983. (The Government has also made assessments for the 1984 tax year but they are not pursued in this action.) Because such assessments are presumptively correct, Mr. Wood bears the burden of proving either that the assessments are erroneous or that he is not responsible for them. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Zack v. Commissioner*, 692 F.2d 28, 19 (6th Cir.1982); *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir. 1981). Mr. Wood has failed to controvert

the Government's evidence by affidavit or other proof as required by FED.R.CIV.P. 56(e). Consequently, the Government is entitled to a summary judgment against Mr. Wood. *See Glen Eden Hospital v. Blue Cross,* 740 F.2d 423, 427 (6th Cir. 1984); *Bryant v. Kentucky,* 490 F.2d 1273, 1274–1275 (6th Cir.1974). In his Answer, Mr. Wood admits the allegations of paragraph nine of the Government's Complaint which calculates "an unpaid balance of taxes, interest and penalties, including additional interest accruals, of $291,839.52, plus additional statutory interest and penalties from July 15, 1985, as provided by law." As Mr. Wood has admitted his tax liability, and as only the taxpayer himself may question the Government's assessments, *United States v. Formige,* 659 F.2d 206, 208 (D.C. Cir.1981), the Court shall enter a judgment against Defendant Charles Wood for $291,-839.52, plus additional statutory interest and penalties which have accrued since July 15, 1985.

### 2. Foreclosure on the Property and Proceeds

■ Section 2410(c) of Title 28 of the United States Code states:

[a] judgment or decree in [an action to foreclose a mortgage or other lien upon real property] shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated.

Accordingly, the effects of the judicial sale on the Government's tax liens are governed by the laws of Kentucky.

■ In Kentucky, a sale of real property pursuant to a judicial decree extinguishes a creditor's liens thereon. *Anderson v. Bd. of Drainage Com'rs, Ohio Co.,* 293 Ky. 449, 454, 169 S.W.2d 289, 291 (Ky.1943); *Rogers v. Beam's Executor,* 169 Ky. 239, 242, 183 S.W. 930, 931 (Ky.1916); *Makibben v. Arndt,* 88 Ky. 180, 182, 10 S.W. 642, 643 (Ky.1889). Since, for purposes of discharge, a federal lien is accorded the same treatment as a lien created under local law, the Court concludes that the August 1984 sale of Berry Hill stripped the Government's tax liens from the property. However, because the property was sold to satisfy a lien "prior to that of the United States", federal law granted the Government a right of redemption good for 120 days. *See* 28 U.S.C. § 2410(c). The Government allowed its right to lapse and now claims an interest in the one year statutory right of redemption provided by KY.REV.STAT. § 426.530.

■ Section 426.530(1) confers a one year right of redemption on "the defendant and his representatives" when real property brings less than two-thirds of its appraised value at a judicial sale. Although the Kentucky courts have discussed the right on numerous occasions, their opinions have not addressed an important issue which has emerged in the instant case: *Does a defendant debtor acquire a right of redemption by virtue of a judicial sale of real property subject to liens for his debts if, prior to the sale, he conveys his interest in the property to another?* The defendants answer "no", relying on an opinion which speaks in terms of an "owner's" right of redemption. *Messer v. American Eagle Fire Ins. Co.,* 227 Ky. 3, 6, 12 S.W.2d 358, 359 (Ky.1928). The Government answers "yes", citing authorities which speak in terms of a "debtor's" right to redeem even after conveying his interest in property to another. *Miller v. Wheeler,* 147 Ky. 131, 134, 143 S.W. 1028, 1030 (Ky.1912); *Potter v. Skiles,* 114 Ky. 132, 139, 70 S.W. 301, 302 (Ky.1904). A review of these opinions reveals that the terms "owner" and "debtor" merely reflect the status of the parties in a particular case. They do not represent authoritative declarations regarding the status of those entitled to redemption rights under Kentucky law. Nevertheless, the Court finds it must agree with the defendants' contention that only those who possess an interest in the property at the time of its sale acquire a statutory right of redemption.

The Government's position rests on two cases in which the following statement by the Iowa Supreme Court is cited with approval but without comment or analysis:

The judgment debtor, certainly where, as in the case at bar, he has conveyed with

covenants, may, as such debtor, redeem. His grantee, by virtue of his conveyance, has such a interest in the property as would also entitle him to redeem.

*Harvey v. Spaulding*, 16 Iowa 397, 85 Am. Dec. 526 (date unknown), quoted in *Miller*, 147 Ky. at 134, 143 S.W. at 1030, and *Potter*, 114 Ky. at 139, 70 S.W. at 302. Unfortunately, neither *Miller* nor *Potter* addresses the issue presented in the instant action.[1] Since the cases are silent, the Court must consider the policy that guides and the logic which governs the statutory right of redemption.

Under Kentucky law, mortgage debtors are afforded two types of redemption. The first—the common law equity of redemption—permits a mortgagor who fails to pay his mortgage debt at its maturity, and who is thus in default, to make such payment and satisfaction at any time prior to the actual foreclosure of the mortgage. An equity of redemption thus "relieve[s] the debtor of the harsh forfeiture of his estate for nonpayment of the mortgage debt within the time stipulated." *Ebelharr v. Tennelly*, 118 Ky. 43, 49, 80 S.W. 459, 460 (Ky.1904). The second type of redemption—the aforementioned right of redemption—is a statutory creation and, unlike an equity of redemption, "is not an estate in mortgaged property, but is a mere personal privilege of redeeming the property within

a certain time after the mortgage has been foreclosed." *Id.* Despite the important differences between them, the equitable and statutory redemptions serve a common purpose by affording a debtor a means by which he may preserve his ownership of real property and thereby protect his equity in it.

By exercising his equity of redemption, a debtor averts compulsory divestiture of his estate. However, if he is unable to redeem and the property is sold, the statutory right of redemption protects him against forfeiture of his equity in the property, for if the sale brings less than two-thirds of the property's appraised value, the debtor retains title and may remain in possession for an additional year while determining whether to redeem. *See* KY.REV.STAT. § 426.530(3); *Messer v. American Eagle Fire Ins. Co.*, 227 Ky. 3, 6, 12 S.W.2d 358, 359 (Ky.1928). Thus, like the equity of redemption, the right of redemption affords the debtor an opportunity to preserve the value of his estate by enabling him to prevent a bargain sale from becoming a *de facto* forfeiture of his equity in the property.

■ Having determined that the statutory right of redemption is designed to protect the value of one's equity in property subject to judicial sale, it follows that if a debtor sells or otherwise conveys his property to another prior to sale, the rationale underlying the statutory right of re-

---

1. In *Miller*, the Iowa opinion is quoted in conjunction with the court's ruling that where a debtor's land has been sold by judicial sale pursuant to KY.STAT. § 2364 (current version at KY. REV.STAT. § 426.530) and, *after* the sale but before the expiration of the year in which the debtor may redeem his property, he conveys his interest in the land to another, the debtor's grantee, as the debtor's "representative" under the statute, has the right to prosecute an appeal from an order denying him his right to redeem the land.

In *Potter*, the first of the Kentucky cases to cite the Iowa opinion, the debtor obtained a right of redemption under KY.STAT. § 1684 (current version at KY.STAT.REV. § 426.220) rather than under § 2364 as in *Miller*. Section 1684 controlled sales of land under execution whereas § 2364, the predecessor of § 426.530, governed the consequences of sales made pursuant to judgments and orders *other than* execution. Whether sold under execution or pursuant to judgment other than execution, the sale of a

debtor's property created a right of redemption in "the defendant and his representative". Furthermore, the redemption rights thus created were liable for sale under execution. *See* KY. STAT. § 1686 (current version at KY.REV.STAT. § 426.240) and KY.STAT. § 2365 (current version at KY.REV.STAT. § 426.540). However, even if redemption rights were sold under execution, the statutes provided (and continue to provide) for an additional right of redemption beyond the reach of any creditor. The *Potter* court addressed this secondary right of redemption and, like the Iowa court, found that both the judgment debtor and his grantee may exercise it. Like *Miller*, however, the *Potter* ruling can be limited to situations in which the debtor holds title to the property *at the time of the judicial sale* from which the rights of redemption arise. The cases contain nothing to suggest that a debtor is endowed with an inalienable statutory right to redeem property which he has chosen to convey *prior* to a judicial sale.

demption no longer serves him, for he is no longer threatened with compulsory divestiture of his equity at a bargain price. The Government suggests that the debtor should be accorded a right of redemption in this circumstance, for the debtor has an interest in seeing that his creditors receive the full value of the property, thereby eliminating or at least reducing the threat of a deficiency judgment against him. While the Court agrees that a debtor has an interest in satisfying his creditors, it finds that one who conveys property to another while it is under judgment surrenders his interests in the property (including any interest in the proceeds of a subsequent judicial sale) in exchange for the consideration paid by the grantee. Accordingly, the Court rules that a defendant debtor who has conveyed his property to another prior to its judicial sale does not acquire a right of redemption under Ky.Rev.Stat. § 426.-530.[2]

 The foregoing analysis leads the Court to the following conclusions regarding the Government's foreclosure claim. If Mr. Wood's conveyance of Berry Hill to Mrs. Wood was not fraudulent, it divested him of all interest in the property so that the subsequent bargain sale which stripped the Government's liens from Berry Hill bestowed nothing on Mr. Wood to which a tax lien could attach. On the other hand, if the conveyance was fraudulent, title did not leave Mr. Wood and he alone derived a right of redemption from the sale subject, however, to the Government's liens on after acquired property which followed his right of redemption when he later quitclaimed it into Mrs. Wood's hands.[3] *Glass City Bank v. United States*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945) (tax lien attaches to taxpayer's after acquired property); *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) (tax lien follows property upon transfer to another). Mrs. Wood's dealings with Dr. and Mrs. Guarnaschelli constituted a *de facto* exercise of the statutory right of redemption.[4] Conse-

**2.** The grantee of such a debtor, however, steps into the debtor's shoes and, as holder of title to the property at the time of sale, is entitled to any excess proceeds of the sale and is the exclusive beneficiary of the statutory right of redemption. *See* Ky.Rev.Stat. § 426.500 (surplus proceeds of judicial sale belong to "the owner of the property" sold); *see also Call v. Thunderbird Mortgage Company, Inc.*, 58 Cal.2d 542, 25 Colo. Rptr. 265, 375 P.2d 169 (Cal.1962).

**3.** The defendants contend that even if Mr. Wood acquired a right of redemption and later conveyed it to his wife, Mrs. Wood was entitled to her own right of redemption which she could exercise independently of her husband's "lien infected" right. The Court does not agree. The record reveals that title to Berry Hill was "conveyed to Charles F. Wood, married, by Deed dated July 26, 1965." Consequently, Mrs. Wood's sole interest in the property prior to Mr. Wood's conveyance of title to her was an inchoate dower right under Ky.Rev.Stat. § 390.020. She surrendered that interest when she joined her husband in the mortgage on the property and therefore had no interest in Berry Hill at the time of the judicial sale apart from that allegedly conveyed to her husband. Ky.Rev.Stat. § 392.040. *See McClain v. McClain*, 151 Ky. 356, 151 S.W. 926 (Ky.1912); *Morgan v. Wickliffe*, 115 Ky. 226, 72 S.W. 1122 (Ky.1903); *Clift v. Williams*, 105 Ky. 559, 49 S.W. 328 (Ky.1899); *Schweitzer v. Wagner*, 94 Ky. 458, 22 S.W. 883 (Ky.1893). At best, she had potential dower rights in the excess proceeds of the sale, *see Potter v. Skiles*, 114 Ky. 132, 140, 70 S.W. 301, 303 (Ky.1904), but even that interest was extinguished upon her divorce. *See* Ky.Rev.Stat. § 392.090(1). Consequently, if Mrs. Wood's title is set aside as fraudulently conveyed, she cannot assert an independent right of redemption, for her status at the time of the sale was neither that of an owner nor that of a grantee of an owner.

**4.** In matters of taxation, substance, not form, controls. *Northern Trust Co. v. United States*, 389 F.2d 731, 734–35 (7th Cir.1968). Likewise, mere formalities are not permitted to disguise the true nature of a transaction and thereby frustrate the collection of revenue. *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); *see also Davis v. Commissioner*, 585 F.2d 807, 811–12 (6th Cir.1978). Mrs. Wood and Mrs. Johnson argue that Mrs. Wood did not exercise Mr. Wood's right of redemption if, indeed, one existed. The Court does not agree. The procedures for exercise of such a right are very informal and merely require a tender of redemption money to the purchaser. Ky.Rev.Stat. § 426.-530(2); *see also Miller v. Wheeler*, 147 Ky. 131, 134, 143 S.W. 1028, 1030 (Ky.1912).

In a letter addressed to Mr. Irwin Waterman, attorney for Dr. and Mrs. Guarnaschelli, dated April 4, 1985, Mr. D.H. Robinson, attorney for Mrs. Wood, stated that his client "will take steps to redeem the property if necessary." The Guarnaschelli's thereafter agreed to Mrs. Wood's proposal to surrender their interest upon return of their purchase money. The

quently, if the right exercised by Mrs. Wood arose from Mr. Wood's interest in the property, the Government's liens on Mr. Wood's right of redemption attached to Berry Hill as well as to the proceeds of the sale to Mrs. Johnson, and both property and proceeds are subject to foreclosure in satisfaction of the judgment today entered against Mr. Wood. However, if the right of redemption arose from Mrs. Wood's exclusive ownership of the property at the time of the judicial sale, the Government has no interest in either the property or proceeds upon which to foreclose. Accordingly, the Government's foreclosure action stands or falls on the issue of fraudulent conveyance, as do its tortious conversion and levy claims. *Cf. Elswick v. Scott,* 225 Ky. 309, 8 S.W.2d 398 (Ky.1928).

### 3. Fraudulent Conveyance
### Tortious Conversion
### Failure to Honor Levy

The Government seeks to set aside Mr. Wood's conveyance of Berry Hill to Mrs. Wood on the basis of KY.REV.STAT. § 378.-010 which states that a conveyance of real property "made with the intent to delay, hinder, or defraud creditors ... shall be void against such creditors." The defendants have vigorously opposed this claim. The Government, however, has neither briefed the issue nor developed a record to support the alleged fraud.

In the majority of instances in which § 378.010 has been successfully invoked to set aside conveyances between husband and wife, the debtor spouse has conveyed property in an attempt to place his or her assets beyond the reach of creditors. However, upon reviewing the record in the instant case, the Court can find no evidence of an attempt to shelter Berry Hill from the Government's tax liens. The July 9, 1984 conveyance of Berry Hill from Mr. Wood to Mrs. Wood was made in conformity with a property settlement agreement executed on March 30, 1984. The agreement, which was made in furtherance of an amicable adjustment and settlement of the Woods' property rights as man and wife,

called on Mr. Wood to convey Berry Hill to Mrs. Wood who agreed to list the property for sale for a total price of $715,000.00. The agreement further stipulated that the net proceeds of the sale were to be used to satisfy various liens and mortgages including "a federal tax lien existing against the assets of the Husband." Thus, the property settlement agreement did not shelter Berry Hill from Mr. Wood's creditors.

Although the agreement to convey Berry Hill to Mrs. Wood was free from fraud, the actual conveyance draws scrutiny for it was made only after a judgment had been entered ordering the judicial sale of the property. After bringing such scrutiny to bear on the conveyance, however, the Court finds that it too is free from fraud for it neither hindered nor delayed execution of the tax liens nor otherwise defrauded the Government of its claims against Mr. Wood. The Government was a party to the creditor's action which resulted in the judicial sale of Berry Hill. As a result of that action, the Government lost its liens on the property but obtained a 120 day right of redemption and, had it joined in the Bank of Louisville's Motion for Judgment, could have easily secured a lien on all sale proceeds in excess of those needed to satisfy the Bank's superior lien. Since the appraised value of the property exceeded the sum of the liens held by the Government and the Bank, the Government's interests were not seriously imperiled by the sale and, in any case, it had a 120 day right of redemption which it could exercise if disappointed with the sale proceeds. The Government lost none of these safeguards by virtue of Mr. Wood's conveyance to his wife; however, the Government did lose its potential interest in the then inchoate one year statutory right of redemption which, after the pre-sale conveyance of the property, could no longer accrue to Mr. Wood and therefore could not be subjected to Government liens on his after acquired property.

 Transformation of the conveyance of Mr. Wood's potential right of redemption into a vehicle for fraud would

---

Court finds that, for the purposes of determining the taxable consequences of Mrs. Wood's

actions, this transaction constituted a *de facto* exercise of the right of redemption.

require the collusion of everyone who attended the judicial sale, for unless the winning bid was kept below two-thirds of the appraised value of the property, no statutory right of redemption could arise. The Government alleged such collusion by including Dr. and Mrs. Guarnaschelli, the high bidders at the judicial sale, as defendants in its fraud count; however, the Government's subsequent agreement to dismiss the Guarnaschelli's coupled with its failure to allege additional grounds for fraud moves the Court to conclude that Mr. Wood conveyed Berry Hill to Mrs. Wood without fraudulent intent. Consequently, the conveyance to Mrs. Wood will not be set aside so as to create an exclusive right of redemption in Mr. Wood subject to the Government's liens on after acquired property. There being no right of redemption in Mr. Wood, the Government's claims for foreclosure, tortious conversion, and failure to honor a levy must also fail, for these claims require a common element which is missing in this case—the exercise of a right of redemption subject to a tax lien. Because Berry Hill was conveyed without fraud, Mrs. Wood, as sole legitimate owner of the property at the time of the lien stripping judicial sale, obtained an exclusive right of redemption under Kentucky law; consequently, Mr. Wood had nothing to convey by his December 10, 1984 quitclaim, and the Government's liens had no vehicle by which to reattach to the property while in Mrs. Wood's hands.

### 4. Third Party Beneficiary

■ The March 30, 1984, property settlement agreement contained the following provisions for the conveyance and sale of Berry Hill.

NOW, THEREFORE, it is agreed as follows:

1. [The] residence, known as "Berry Hill" at Glenview, Kentucky, and three building lots on Shallcross Road in Glenview Hills Subdivision shall immediately be conveyed to the Wife, subject to existing liens and mortgages. She shall list said real estate for sale for a total price of $715,000.00. The parties agree that that property shall be sold on such terms and conditions as they agree and the net proceeds thereof shall be distributed as received as follows:

a) A federal tax lien existing against the assets of the Husband in the amount of $126,471.01 with interest thereon shall be paid in full.

b) A first mortgage lien to the Bank of Louisville with interest thereon shall be then paid. The Husband shall make all required payments of principal and/or interest pending the sale.

c) A mortgage to First National Bank in a sum not exceeding $50,000.

d) The Wife shall receive the balance of proceeds from the sale of the property after the payment of those items set out in paragraphs a), b) and c).

The Government argues that it was an intended third party creditor beneficiary of this agreement. The Court agrees, for although the Government was not a party to the agreement, it was a direct beneficiary of Mrs. Wood's promise to sell Berry Hill and to distribute the proceeds thereof to Mr. Wood's creditors. *See* RESTATEMENT (SECOND) OF CONTRACTS § 302(1)(a) and comment b (1981); J. CALAMARI & J. PERILLO, CONTRACTS § 17–2, at 609, § 17–6 at 619 (2d ed. 1977); *King v. National Industries, Inc.*, 512 F.2d 29, 33 (6th Cir.1975). *See also Klenekole Mining Co. v. Lusk*, 245 Ky. 73, 53 S.W.2d 168 (Ky.1932) (assignee's promise to pay royalties owed to lessor by lessee/assignor enforceable by lessor); *Rosa v. Nava*, 235 Ky. 574, 31 S.W.2d 910 (Ky.1930) (buyer's promise to pay off seller's creditors enforceable by creditors). *See generally Chesapeake & Ohio R.R. v. Wadsworth Electric*, 234 Ky. 645, 29 S.W.2d 650 (Ky.1930). Mrs. Wood contends that even if the Government were an intended third party creditor beneficiary, its rights were subject to rescission and to her defenses to performance of the underlying agreement. As shown below, however, her arguments fail to absolve her of liability for breach of her promise to pay off her husband's tax lien.

*(a) Rescission*

Under Kentucky law, "unless the right of rescission is reserved in the contract, the parties to a contract for the benefit of a

third party cannot deprive him of its benefits, after he has accepted, adopted or acted upon the contract." *Rhodes v. Rhodes,* 266 S.W.2d 790, 792 (Ky.1953). The Woods' property settlement agreement did not reserve the right of rescission. However, on December 10, 1984, Mr. and Mrs. Wood executed an addendum to the agreement whereby Mr. Wood effectively rescinded the provision which required Mrs. Wood to apply proceeds from the sale of Berry Hill to the Government's tax lien.[5] Consequently, unless the Government "accepted, adopted or acted upon" the provisions of the property settlement agreement prior to execution of the addendum, it lost its status as a third party creditor beneficiary.

██ The parties agree that Mr. Wood informed the Internal Revenue Service of the terms of the property settlement agreement within a month after its execution and, according to the uncontradicted affidavit of Revenue Officer Roy Wyatt, repeatedly assured the Government that the provision in Paragraph 1(a) for payment of the tax lien from Mrs. Wood's sale proceeds had survived the judicial sale. The contents of Officer Wyatt's unchallenged affidavit support a finding that the Government accepted Mr. Wood's representations regarding his wife's continuing obligations under the property settlement agreement prior to the execution of the addendum which rescinded those obligations.[6] Consequently, since the right of rescission was not reserved in the property settlement agreement and since the Government accepted Mr. Wood's representations regarding its rights as a third party creditor beneficiary prior to the execution of the addendum, the Government's right to receive $126,471.01 from the proceeds of the sale of Berry Hill survived the Woods' attempt to rescind it. *Rhodes,* 266 S.W.2d at 792.

### (b) Defenses

██ As a general rule, a promisor may "assert against the beneficiary any defense which he could assert against the promisee if the promisee were suing on the contract." J. Calamari & J. Perillo, Contracts § 17–8, at 623 (2d Ed.1977). To this end, Mrs. Wood raises several defenses to the Government's claim that she breached her promise to pay off her husband's tax lien from the proceeds of Berry Hill. First, she contends that Mr. Wood's failure to pay the Bank of Louisville's mortgage, a failure which precipitated the judicial sale, made it impossible for her to list and sell Berry Hill in accordance with the property settlement agreement and therefore excused her failure to share the sale proceeds with the Government. This contention is erroneous, for she retained title and possession of the property throughout the judicial proceedings and, as sole owner of the statutory right of redemption, could have listed and sold the property at anytime within a year after the judicial sale.[7] *Messer v.*

5. The addendum provided that

In the event that the Wife effects a redemption of said property at some point in the future, the Husband waives any rights which he has to any portion of the proceeds of any subsequent sale of said residence and more specifically referred to in Paragraph 1(a) and 1(c) of the original Agreement between the parties.

Paragraph 1(a) provided for payment of Mr. Wood's $126,471.01 tax lien from the proceeds of the sale of Berry Hill.

6. Paragraph 9 of Officer Wyatt's September 11, 1986, affidavit states:

On the numerous occasions that Mr. Wood assured me that his March 30, 1984 agreement with Jane H. Wood required that the tax liens be paid first from the proceeds of the sale from Berry Hill, I advised Mr. Wood that the Internal Revenue Service desired full payment of his delinquent tax liabilities. I further indicated to Mr. Wood that the requirement in his March 30, 1984 agreement with Mrs. Wood that the tax liens be paid first from the sale proceeds of Berry Hill was acceptable to me. This was because, based upon his Forms 433–A, Berry Hill was the only apparent source of fully collecting his delinquent tax liability.

7. It is important to note that Mr. Wood's promise in Paragraph 1(b) of the property settlement agreement to "make all required payments of principal and/or interest [on the first mortgage lien] pending the sale" was not made a condition precedent to Mrs. Wood's performance of her promise in Paragraph 1(a) to sell Berry Hill and pay off the $126,471.01 tax lien. Whatever right of action Mrs. Wood may have acquired against Mr. Wood by virtue of his breach of Paragraph 1(b), her remedies did not include relief from performance of the third party beneficiary contract established by Paragraph 1(a).

*American Eagle Fire Ins. Co.,* 227 Ky. 3, 6, 12 S.W.2d 358, 359 (Ky.1928). Nor may she contend that the subject matter of the contract was destroyed by the judicial sale for the sale did not divest her of title, but merely placed an additional encumbrance thereon. Only had she been unable to exercise her statutory right of redemption would her duty to sell the property have ended. Finally, she cannot successfully argue that there was a failure of consideration, for as seen earlier Mr. Wood's performance under the agreement succeeded in vesting Mrs. Wood with good title to Berry Hill which survived the judicial sale. Thus, for the reasons stated above, the Court concludes that Mrs. Wood's proposed defenses to the third party beneficiary contract fail to relieve her from liability for breach of her promise to pay the Government the first $126,471.01 (plus interest) she received from the sale of Berry Hill.

*(c) Estoppel*

▆▆▆▆ Mrs. Wood argues that the Government should be estopped from collecting $126,471.01 (plus interest) from the proceeds of the sale to Mrs. Johnson, for there were other assets upon which it could have foreclosed to satisfy her ex-husband's tax liabilities. Although the Government admits that it may seek liquidation of those "other assets" in the future, it correctly notes that the United States cannot be estopped for mere inaction; rather, some showing of affirmative misconduct is required. *United States v. River Coal Co., Inc.,* 748 F.2d 1103, 1108 (6th Cir.1984). The Government's failure to seek foreclosure on other assets belonging to the Woods does not constitute affirmative misconduct; consequently, it cannot be estopped from collecting the full $126,471.01 (plus interest) from Mrs. Wood.

**D. Conclusion**

Based on the foregoing analysis, the Court issues the following rulings on the Government's claims:

(a) Judgment shall be entered against Mr. Wood for tax liabilities totaling $291,-839.52, plus additional statutory interest and penalties which have accrued since July 15, 1985.

(b) The Government's claim seeking foreclosure on Berry Hill and on the proceeds of the sale, a claim erroneously premised on the existence of a statutory right of redemption subject to a tax lien, is dismissed.

(c) The Government's fraudulent conveyance claim is dismissed.

(d) The Government's tortious conversion claim is dismissed.

(e) The Government's claim against Mrs. Wood for failure to honor a tax levy is dismissed.

(f) Judgment shall be entered against Mrs. Wood for $126,471.01, plus interest thereon as agreed in Paragraph 1(a) of the March 30, 1984 property settlement agreement, for breach of her promise to pay the Government that amount from the proceeds of the sale of Berry Hill.

An appropriate order shall accompany this Memorandum Opinion.

**ORDER AND JUDGMENT**

This matter is before the Court on cross-motions for summary judgment filed by the United States of America, Defendant Jane Wood, and Defendant Ina B. Johnson. For the reasons stated in the Memorandum Opinion this day entered:

(1) The United States' Motion for Summary Judgment is GRANTED as to Charles Wood, denied as to all claims against Jane Wood save the third party beneficiary claim on which the motion is GRANTED, and DENIED as to Ina B. Johnson.

(2) Defendant Jane Wood's Motion for Summary Judgment is GRANTED on all claims save the United States' third party beneficiary claim.

(3) Defendant Ina B. Johnson's Motion for Summary Judgment is GRANTED.

Accordingly:

(1) JUDGMENT IS ENTERED for the United States against Defendant Charles Wood for $291,839.52, plus additional statutory interest and penalties that have accrued since July 15, 1985.

(2) JUDGMENT IS ENTERED for the United States against Defendant Jane

Wood for $126,471.01, plus interest thereon as agreed in Paragraph 1(a) of the Woods' March 30, 1984 property settlement agreement.

(3) Defendant Ina B. Johnson is DISMISSED.

All claims of all parties are resolved by virtue of this final and appealable order.

IT IS SO ORDERED.